OPINION
{¶ 1} Appellant, K.A., appeals the January 26, 2004 judgment entry of the Common Pleas Court of Crawford County, Juvenile Division, adjudicating him a delinquent youth on charges of gross sexual imposition and aggravated menacing.
 {¶ 2} A complaint was filed on October 3, 1997, alleging that K.A., who was nine years old at the time of the incident, asked another child, age four, to lick his privates. K.A. was charged with gross sexual imposition with regard to the incident. The complaint also alleged that K.A. had threatened to kill a social worker with a knife while she was on a home visit at the residence of K.A.K.A. was charged with aggravated menacing with regard to this incident. On May 8, 1998, a hearing on the complaint was held and K.A. was adjudicated a delinquent child. K.A. was placed on an indeterminate period of probation and committed to the temporary custody of the Crawford County Children Services Board. K.A.'s commitment to the Department of Youth Services ("DYS") was suspended at that time.
 {¶ 3} In November of 2000, the State sought a review of K.A.'s disposition and imposition of commitment to DYS based upon K.A.'s alleged probation violations. After a hearing on the matter, the trial court revoked K.A.'s probation and placed him in the custody of DYS. This Court reversed and remanded the cause in In re Amos, 154 Ohio App.3d 434, 2003-Ohio-5014,797 N.E.2d 568, based upon the trial court's failure to appoint counsel for K.A. and the failure of the trial court to make any record of the hearings in the case.
 {¶ 4} A new hearing in the matter was held on January 16, 2004. At the conclusion of the hearing, the trial court adjudicated K.A. a delinquent child on the gross sexual imposition and aggravated menacing charges and sentenced him to commitment at DYS. It is from this judgment that K.A. now appeals asserting the following three assignments of error.
The trial court erred in finding the child to be a delinquentchild as the rule of In re M.D. (1988),38 Ohio St.3d 149,forbids such a determination.
 The trial court erred in finding the child to be a delinquentchild where the alleged victim of the "threat" did not feel anyfear of the child arising from said "threat".
 The trial court erred in permitting the introduction of thestatement of the child to the police officer, where the child wasof such an age that he could not knowingly waive his Mirandarights.
 {¶ 5} In the first assignment of error, K.A. argues that the holding of In re M.D. (1988), 38 Ohio St.3d 149,527 N.E.2d 286, controls the facts of this case and forbids the adjudication of K.A. on the gross sexual imposition charge. In re M.D.
involved a twelve-year-old female who was adjudicated on one count of complicity to commit rape for directing a five-year-old boy to pull down his pants and put his penis in a five-year-old girl's mouth. Id. The children testified that they were playing doctor and M.D. instructed them to take temperature in that manner. Id. The Ohio Supreme Court reversed the judgment of adjudication based on its conclusion that the crime of rape did not occur, therefore, M.D. could not be adjudicated for complicity to commit rape. Id. The Court dismissed the complaint and declared that "[t]he best interests of the child and the welfare and protection of the community are paramount considerations in every juvenile proceeding in this state." Id. at 153.
 {¶ 6} K.A. relies upon the Court's conclusion in In re M.D.
that the conduct of the children involved "did not constitute a sexual assault or complicity thereto, as proscribed by R.C.2907.02 and 2923.03, but rather could more accurately be characterized as childhood curiosity and exploration" in his assertion that the conduct in the case sub judice was not intended to be covered by R.C. 2907.05. Id. at 151. The offense of gross sexual imposition is defined as follows:
(A) No person shall have sexual contact with another, not thespouse of the offender; cause another, not the spouse of theoffender, to have sexual contact with the offender; or cause twoor more other persons to have sexual contact when any of thefollowing applies:
 (4) The other person, or one of the other persons, is lessthan thirteen years of age, whether or not the offender knows theage of that person.
R.C. 2907.05. R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 7} The State characterizes K.A.'s first assignment of error as a sufficiency of the evidence and manifest weight of the evidence argument. Determining whether the evidence is legally sufficient to support a verdict is a question of law. State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In order to reverse a trial court's judgment on the basis that the judgment is not sustained by sufficient evidence, a majority of the panel must concur in the determination. Id. at paragraph three of the syllabus. In reviewing a challenge to the sufficiency of the evidence supporting a conviction, a reviewing court must determine whether the state has met its burden of production at trial. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, 551 N.E.2d 492. On review for sufficiency, courts do not assess whether the state's evidence is to be believed, only whether, if believed, the evidence against the defendant would support a conviction. Id.
 {¶ 8} A review of the record shows that the State did present some evidence of the elements necessary for the offense of gross sexual imposition under R.C. 2907.05. The State presented K.A.'s statement, through the testimony of Captain Wolfe, in which K.A. indicated that, at his direction, the victim licked his penis. It was not disputed at the hearing that the alleged victim of the offense was under the age of thirteen, as she was four years old at the time of the incident. While the fact that the offender was only nine years old at the time of the incident may raise some additional concerns, the fact that the offender was also under the age of thirteen does not alone make the conduct of the type governed by In re M.D.
 {¶ 9} K.A. was only charged with gross sexual imposition even though the act K.A. described engaging in with the victim was purportedly the act of fellatio. R.C. 2907.01(A) defines "sexual conduct" to include the act of fellatio. Therefore, it appears the conduct engaged in by K.A. is "sexual conduct," the definition of which does not contain the language of "for the purpose of sexually arousing or gratifying either person" as the definition of "sexual contact" does. For whatever reason, the State chose to charge K.A. with gross sexual imposition, which requires the State to show that K.A. engaged in the sexual act for the purpose of arousal or gratification.
 {¶ 10} K.A. did not indicate to Captian Wolfe that he engaged in the sexual act for any particular purpose and, in fact, indicated that he did not know why he requested the four-year-old child to engage in the act. It appears from the record that the sexual conduct only lasted for a very short period of time, possibly only for a matter of seconds. As part of his statement, K.A. relayed to Captain Wolfe that it did not feel good when the victim licked his penis. Further, K.A.'s statement did not indicate whether the victim enjoyed the sexual act or whether K.A. had hoped he or the victim would enjoy the act. This raises concerns regarding the nature of the conduct in this case, specifically whether the State met all of the elements of "sexual contact" as defined in R.C. 2907.01(B). However, it appears that since K.A.'s conduct constituted the more serious act of "sexual conduct" under R.C. 2907.01(A) that arousal or gratification could be inferred in this case for purposes of satisfying the definition of "sexual contact" under R.C. 2901.01(B). Therefore, based upon the content of K.A.'s statement to Captain Wolfe, we can conclude that the State presented some testimony as to each element of the offense of gross sexual imposition even without the State directly presenting evidence that K.A. or the victim received gratification or arousal as a result of the sexual conduct.
 {¶ 11} However, the re-hearing on the charges in this case was held seven years after the alleged incident occurred. The only evidence presented at the hearing was the testimony of a social worker and the testimony of Captain Wolfe who relayed what K.A. stated when he was questioned regarding the incident. No direct testimony from those individuals actually involved in the incident was presented. Neither the victim nor K.A. testified. Further, neither K.A.'s mother nor the victim's mother testified as to what they had been told about the incident. In fact, there is no evidence in the record that the victim or her mother were ever interviewed by law enforcement officers with regard to this incident.
 {¶ 12} As a result, the only evidence of the corpus delicti of the crime, aside from K.A.'s statement to Captain Wolfe, was the testimony of the social worker who relayed that she had been told about the incident by K.A.'s mother and the victim's mother. However, the social worker's testimony did not include what had been relayed to her from K.A.'s mother or the victim's mother, as such would have been inadmissible hearsay.
 {¶ 13} The corpus delicti of a crime is essentially the fact of the crime itself, as it is technically comprised of the act and the criminal agency of the act. State v. Maranda (1916),94 Ohio St. 364, 114 N.E. 1038, paragraph one of the syllabus.
It has long been established as a general rule in Ohio thatthere must be some evidence outside of a confession, tending toestablish the corpus delicti, before such confession isadmissible. The quantum or weight of such outside orextraneous evidence is not of itself to be equal to proof beyonda reasonable doubt, nor even enough to make it a prima faciecase. It is sufficient if there is some evidence outside ofthe confession that tends to prove some material element ofthe crime charged.
Id. at paragraph two of the syllabus. This Court has held that "[a] mere confession without corroboration by the presentation of other evidence outside the confession which tends to prove some material element of the crime charged is not admissible." Statev. Eames (Mar. 7, 1994), 3d Dist. No. 14-93-3, unreported, 1994 WL 66643, *5, citing State v. Black (1978), 54 Ohio St.2d 304,376 N.E.2d 948.
 {¶ 14} The corpus delicti rule is not applied by courts with "dogmatic vengeance." State v. Van Hook (1988),39 Ohio St.3d 256, 261, 530 N.E.2d 883. The state has the burden only to produce "some evidence" of the corpus delicti. Id. Although minimal proof is required, the state must produce some proof that a crime was committed. Id.; Maranda, 94 Ohio St. at 371.
 {¶ 15} In the case sub judice, the record contains virtually no admissible evidence of the corpus delicti of the crime, other than K.A.'s statement. The only evidence, aside from K.A.' statement, that tended to prove that K.A. committed a crime was inadmissible hearsay as neither the victim, nor the victim's mother, testified. In sum, the State failed to prove the corpus delicti, and K.A.'s statement could not be considered by the trial court. Without K.A.'s statement, no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, 61 Ohio St.3d at paragraph two of the syllabus.
 {¶ 16} In order for an appellate court to reverse the trial court's judgment on the basis that the conviction is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony. Thompkins, 78 Ohio St.3d at 389.
Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of the proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends onits effect in inducing belief.'
Id. at 387 (citations omitted). To reverse a conviction on the manifest weight of the evidence, "the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice * * *."State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 17} The State's failure to present any admissible or probative evidence to corroborate K.A.'s statement that he engaged in a sexual act with the victim is compounded by our concerns regarding the characterization of the nature of the sexual act between these two children. Therefore, after reviewing the record and weighing the evidence in this case, we must conclude that the weight of the evidence does not support the trial court's adjudication on the charge of gross sexual imposition. Accordingly, the first assignment of error is sustained.
 {¶ 18} In his second assignment of error, K.A. argues that the trial court erred in finding him delinquent with regard to the aggravated menacing charge based upon the evidence presented at the hearing. Specifically, K.A. argues that the victim of his threat, Miss Meadows, did not experience any fear arising from the threat. K.A. asserts that this fact precluded the State from proving the elements necessary for his adjudication on the aggravated menacing charge.
 {¶ 19} The offense of aggravated menacing is defined in R.C.2903.21 as follows:
(A) No person shall knowingly cause another to believethat the offender will cause serious physical harm to the personor property of the other person, the other person's unborn, or amember of the other person's immediate family.
(emphasis added.) In State v. Striley (1985),21 Ohio App.3d 300,488 N.E.2d 499, paragraph one of the syllabus, the Twelfth District Court of Appeals held that "[w]here a witness testifies that he did not interpret defendant's remarks as a threat to inflict harm, there is no evidence of a `threat of serious physical harm' as required for a conviction of aggravated menacing, and it is error for the trial court to deny defendant's Crim.R. 29 motion for acquittal." The Second District Court of Appeals has held that "it is the victim's subjective belief which becomes the focal point for determining whether certain conduct violates [R.C. 2903.21]. Dayton v. Waugh (Jan. 2, 1981), 2d Dist. No. 6965, unreported. The Court in Waugh referred to the 1974 committee comments to H. 511, which state: "[i]f the victim of a threat is not in fact intimidated, the offender's conduct would constitute attempted menacing if his purpose was to intimidate or he knew that his conduct would probably intimidate." The Court in Waugh found a relevant difference between one victim "believing" that the offender would cause him serious physical harm and the other victim only "imagining" that the offender would cause him serious physical harm. Waugh,
supra.
 {¶ 20} The Second District Court of Appeals later upheld this line of reasoning in Dayton v. Douglas (Jan. 23, 1987), 2d Dist. No. 9841, unreported, 1987 WL 5630, in which it held that, after examining the transcript of the trial, there was "not a scintilla of evidence" that the alleged victim believed
defendant would cause her serious physical harm. The Court inDouglas specifically rejected the trial court's inference that a reasonable person would feel threatened as a result of defendant's actions. Id.
 {¶ 21} This Court has previously held that there must be evidence in the record to support a trial court's finding that the alleged victim experienced fear of serious physical harm.Seibert v. Seibert, Crawford App. No. 3-03-06, 2003-Ohio-3758. Without any evidence in the record to support a finding of fear of serious physical harm on the part of the alleged victim, the trial court abuses its discretion in making the finding based on a reasonable person test. Id.; Douglas, supra.
 {¶ 22} Our review of the record reveals that Miss Meadows, the alleged victim of K.A.'s threats, indicated that she did not experience any fear as a result of the threats. Miss Meadows testified that K.A. became upset and verbally abusive when a telephone call was made to the police regarding the incident involving the four year old girl. Miss Meadows testified that K.A. threw dishwater on her in the kitchen and then followed her into the living room with a knife. Miss Meadows stated that K.A. just stood there holding the knife and that "[h]e never made any kind of step toward either one of us." January 16, 2004 Transcript, p. 9. Although Miss Meadows testified that K.A. made comments that he would hurt her with the knife and made stabbing motions with the knife into some piece of furniture, she testified that she wasn't really afraid that K.A. was going to hurt her. In fact, Miss Meadows stated several times that she was not afraid of K.A. and did not feel threatened. When K.A.'s mother told him to return the knife to the kitchen, K.A. complied. Captain Wolfe further testified that K.A. made a statement in which he admitted that he threw water on Miss Meadows and threatened to kill her with a knife. However, K.A. also stated that he didn't mean what he had said to Miss Meadows.
 {¶ 23} In its findings with regard to the charge of aggravated menacing, the trial court stated that it had been pointed out "that Miss Meadows did clearly testify that she was not in fear." January 16, 2004 Transcript, p. 43. However, the trial court interpreted R.C. 2903.21(A) not to require a subjective interpretation of fear of the victim as an element to the offense. The trial court proceeded to make its determination based upon the "objective facts." Finding that the objective facts supported the elements of aggravated menacing, the trial court found K.A. delinquent on the charge.
 {¶ 24} Based upon the law set forth above that the offender must cause the alleged victim to believe that serious physical harm will result in order to satisfy the elements of the offense of aggravated menacing, we hold that the trial court abused its discretion in finding that the elements of aggravated menacing had been proven even though the alleged victim testified she did not feel threatened. The trial court replaced the subjective belief of the victim standard with the objective person test and made a finding that was not supported by the record. Since the record does not indicate any belief of serious physical harm on the part of the alleged victim as a result of K.A.'s threats, a finding of aggravated menacing is not supported. Therefore, K.A.'s second assignment of error is sustained.
 {¶ 25} Based upon our determination of the first and second assignments of error, the third assignment of error is rendered moot. Having found merit with K.A.'s first and second assignments of error, we reverse the judgment of the Common Pleas Court of Crawford County and remand the cause to that court for entry of judgment dismissing this cause.
Judgment Reversed and Cause Remanded.
 Shaw, P.J., and Rogers, J., concur.