DECISION
{¶ 1} Defendant-appellant, James Goodwin ("appellant"), appeals from judgments of the Franklin County Municipal Court convicting him of aggravated menacing and disorderly conduct after a trial to the court.
 {¶ 2} On October 14, 2004, a criminal complaint was filed against appellant, charging him with one count of aggravated menacing in violation of R.C. 2903.21(A), and one count of disorderly conduct in violation of Columbus City Code ("C.C.") 2317.11(A)(1). Appellant executed a written jury waiver[1]
and the matter was tried to the court on February 14, 2005.
 {¶ 3} Appellant's conviction stems from an incident that occurred on October 6, 2004. Priscilla Price ("Price"), the victim in this case, testified that appellant was an acquaintance of hers as he was a long-time friend of her boyfriend, Robert Huggard ("Huggard"), and is also a relative through marriage. On October 6, 2004, Price was at the home that she shared with Huggard when she heard a loud banging on the door. Huggard answered the door and Price saw appellant standing on the porch. Although appellant did not speak to them, Price and Huggard both testified that they were happy to see appellant and invited him into the house. According to Price and Huggard, appellant continued to stand outside the doorway, then backed up and lifted his shirt, revealing a gun tucked in his waistband. After giving Price a "weird look," appellant walked away. (Feb. 14, 2004 Tr. 10.) After appellant left, Price and Huggard discovered, through information from a mutual friend, that appellant came to the house because he thought that Price and Huggard had burglarized his residence.
 {¶ 4} Appellant testified that he did go to Price and Huggard's residence that day because he needed to obtain their address. According to appellant, when he called the police to tell them that he had been burglarized, the police instructed him to get an address for the parties that he believed were responsible. Appellant testified that, despite possessing guns, he did not have a gun on his person when he went to the house. Further, appellant testified that, although Price and Huggard invited him into the house, he just walked back to the car that Rhonda Brown ("Brown"), his girlfriend, was driving, and they left.
 {¶ 5} According to Brown's testimony, she drove appellant to Price and Huggard's residence, appellant went to the door, and appellant just walked back to the car after Huggard answered the door, despite Huggard inviting both she and appellant into the house. Brown testified that appellant does possess guns, but did not have one with him when they went to Price and Huggard's house on October 6, 2004.
 {¶ 6} Following the presentation of the evidence, the court found appellant guilty of both charges in the complaint. Appellant was sentenced that same day.
 {¶ 7} On appeal, appellant advances the following three assignments of error:
[1.] The trial court erred by overruling the defendant's motion for judgment of acquittal on the charge of aggravated menacing.
[2.] The trial court's judgment of conviction on the charges of aggravated menacing and disorderly conduct was not supported by sufficient evidence and was against the manifest weight of the evidence.
[3.] The trial court erred by convicting the defendant when the defendant did not receive effective assistance of counsel.
 {¶ 8} In his first assignment of error, appellant argues that the trial court erred in overruling his motion for judgment of acquittal on the aggravated menacing charge. We will review appellant's first assignment of error challenging the denial of appellant's Crim.R. 29 motion for acquittal together with appellant's challenge to the sufficiency of the evidence because appellate courts use the same standard of review for both. Statev. George, Franklin App. No. 02AP-1412, 2003-Ohio-6658, citingState v. Ali, 154 Ohio App.3d 493, 2003-Ohio-5150.
 {¶ 9} Crim.R. 29(A) provides that:
The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
 {¶ 10} When presented with a challenge to the sufficiency of the evidence, the Ohio Supreme Court has delineated the role of an appellate court as follows:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560, followed.)
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 11} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas
(1982), 70 Ohio St.2d 79, 80. Thus, a verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484; Jenks,
supra, at 273.
 {¶ 12} R.C. 2903.21(A) defines the offense of aggravated menacing and states, in relevant part, that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person." Further, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C.2901.22(B).
 {¶ 13} C.C. 2317.11(A), provides, in part, that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following: (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]"
 {¶ 14} Appellant contends that appellee failed to present sufficient evidence of aggravated menacing and disorderly conduct. We note that while appellant admitted going to Price and Huggard's residence on October 6, 2004, he denied having a firearm with him at the time. However, appellant argues that, even if he did have a gun, the evidence is insufficient to establish that Price believed appellant would cause her serious physical harm, or that appellant knowingly caused her to have such belief.
 {¶ 15} It is well-established that the state does not need to prove the offender's ability to carry out a threat or any movement toward carrying it out. State v. McClelland (Mar. 7, 2002), Franklin App. No. 01AP-630, citing State v. Schwartz
(1991), 77 Ohio App.3d 484. While the subjective belief in the victim is necessary to establish the crime of aggravated menacing, evidence of one's belief of serious physical harm may be established by circumstantial evidence. State v. Crews (June 26, 2001), Franklin App. No. 00AP-1391.
 {¶ 16} Appellant argues that Price was unable to definitively state that she saw a gun, however, she testified in response to the state's questioning as follows:
Q. Ma'am, so did you actually see the gun or saw something you thought had to be a gun?
A. I seen a gun. He had it up on his waist. He pulled it up.
Q. Pulled what up, ma'am?
A. He pulled up his shirt and gave us this weird look, while his girlfriend is going back and down the road, we're waving at her, saying, "Come on, come in the driveway and park." And he walks off, and that was it.
(Tr. 10.)
 {¶ 17} Further, on cross-examination, Price testified:
Q. When you say, "It had to be a gun," what do you mean by that?
A. It looked just like a gun. Maybe it was a fake gun, but he had something that looked just like a gun.
(Tr. 25.)
 {¶ 18} Appellant argues that Price's actions are clearly inconsistent with her testimony that she was in fear. Appellant contends that, because Price did not immediately call the police and instead tried to call appellant, Price was not fearful of being harmed.
 {¶ 19} In McClelland, supra, this court reviewed a defendant's charge of aggravated menacing against his mother. The defendant argued that the evidence did not corroborate his mother's testimony that she feared being harmed because she did not call the police immediately, but, rather, went to work, did not tell anyone at work, returned home knowing defendant would be there, and ultimately called a mental health facility rather than the police. This court found sufficient evidence to establish aggravated menacing because the victim testified as to her fears, and she explained that she went to work because she did not want to lose her job and she did not tell anyone because she felt ashamed. In addition, she explained that she called a mental health facility rather than the police because she felt she needed professional help from a mental health provider to contend with her son's situation.
 {¶ 20} In the instant case, while Price admitted that she did not call the police immediately, or that she did not know what to think at the time appellant was standing on the porch, she stated:
A. I was like a deer looking at headlights. I didn't know what to think. I didn't know what was going on, if something happened between him and my boyfriend. All kind of things were going through my mind.
(Tr. 26.)
 {¶ 21} As noted by appellant, Price testified that she did not yell, scream, or duck in response to appellant showing her the gun. According to Price, she did not know what was going on at the time appellant showed the gun. The following exchange took place at trial:
Q. You didn't think he was trying to threaten you?
A. Huh?
Q. You didn't think he was trying to threaten you?
A. Not at that very particular moment, until he left. Then it sunk in what he actually did and —
Q. Wait a minute. Wait a minute.
A. — he's not playing now.
(Tr. 27.)
 {¶ 22} According to Price's testimony, she was surprised at what happened, and then upon finding out appellant's reason for coming over, i.e., because appellant thought that Huggard and Price had burglarized him, she realized that it was a threat. Price testified that she was fearful because she believed appellant was capable of using a gun and was making a serious threat.
 {¶ 23} Price testified that she called appellant after the incident and yelled and cursed at him, and appellant contends that this is an indication that Price did not believe that appellant would cause her serious physical harm. However, her actions, while they may appear unorthodox, do not negate her belief that appellant was serious in his threat and that she was fearful of appellant.
 {¶ 24} Appellant also argues that, even if Price did believe that appellant would cause serious physical harm, there is not sufficient evidence that appellant "knowingly" caused Price to have such belief. However, as stated previously, one acts knowingly regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B).
 {¶ 25} According to the evidence, appellant arrived at the Price and Huggard residence, banged on the door, stood there, and did not respond to Huggard and Price's invitations for appellant to come into the house. Then, without talking, appellant lifted his shirt, revealing a firearm, and then he left.
 {¶ 26} Based on the evidence and testimony, we find that, when viewed in a light most favorable to the prosecution, a reasonable trier of fact could have found all the essential elements of aggravated menacing and disorderly conduct, as appellant was charged, beyond a reasonable doubt.
 {¶ 27} In his second assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and to determine whether the witnesses' testimony is credible.State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact-finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 28} There is no question that this case revolved around the testimony of the witnesses. The testimony of all the witnesses was very similar with the exception of the existence of the gun. While Huggard and Price testified that appellant had a gun, appellant and Brown testified that he did not.
 {¶ 29} Both Price and Huggard testified that appellant lifted his shirt and revealed a gun tucked in his waistband. Both testified that appellant said nothing despite their efforts to invite him into the house, and that, after revealing the gun, appellant merely turned around and walked back to the car.
 {¶ 30} Appellant testified that his nickname is Show Gun, that he owns guns, that Huggard would not have been surprised to see him with a gun because they were "in the same crew," and he did not show a gun to Price and Huggard. (Tr. 79.) While Brown testified that appellant did not have a gun, there is no testimony regarding whether or not she saw appellant lift his shirt, or whether she would have been able to view the front of appellant's waistband when he was at the door of the residence since it appears from the testimony that appellant had his back to Brown at the time.
 {¶ 31} Upon review of the record, we cannot say that the jury's verdict was against the manifest weight of the evidence. The basis for appellant's manifest weight argument is the witnesses' conflicting testimony. A conviction, however, is "not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Moore,
Montgomery App. No. 20005, 2004-Ohio-3398, quoting State v.Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757.
 {¶ 32} We conclude that the trier of fact did not lose its way in resolving credibility determinations, nor did the convictions create a manifest miscarriage of justice. Here, the trier of fact could have reasonably concluded that Price could have believed that appellant knowingly caused Price to believe that appellant would cause serious physical harm to her, and that appellant recklessly caused inconvenience, annoyance, or alarm to Price by engaging in threatening harm to her, or engaging in violent or turbulent behavior. While appellant denies that he had a gun with him on October 6, 2004, and contends that Price's subjective fears were unfounded, the trier of fact was in the best position to determine the credibility of the testimony presented and we decline to substitute our judgment for that of the trier of fact.
 {¶ 33} Based on the foregoing, appellant's first and second assignments of error are overruled.
 {¶ 34} In his third assignment of error, appellant argues that the trial court erred by convicting appellant when appellant did not receive effective assistance of counsel. "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington (1984),466 U.S. 668, 686, 104 S.Ct. 2052. In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. Id. at 687. The defendant must then establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693.
 {¶ 35} According to Strickland:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687.
 {¶ 36} "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, quotingMichel v. Louisiana (1955), 350 U.S. 91, 101, 76 S.Ct. 158. A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel. State v. Hester (1976), 45 Ohio St.2d 71, 75.
 {¶ 37} Appellant argues that his trial counsel's performance was deficient because (1) she failed to admit the marked and authenticated audiotape of Price's phone calls to appellant into evidence; (2) she failed to attempt to get Huggard's phone calls into evidence, nor did she play it for the court; (3) she failed to cross-examine the state's witnesses about their criminal records; and (4) she failed to object to leading questions by the prosecuting attorney.
 {¶ 38} We note initially that appellant has attached transcripts of the recordings of telephone calls allegedly made by Price and Huggard. Appellant acknowledges that the material is outside the record but, nonetheless, urges us to consider it, arguing that pursuant to State v. Cowan, 101 Ohio St.3d 372,2004-Ohio-1583, which held that municipal courts lack jurisdiction to review post-conviction relief petitions filed pursuant to R.C. 2953.21, he will be left without a remedy, if we decline to review the evidence. However, we need not address this portion of appellant's argument because, even with the consideration of the material, appellant's claim for ineffective assistance of counsel with regard to the taped phone calls fails because appellant still is unable to satisfy either prong of theStrickland test.
 {¶ 39} Contrary to appellant's assertions, there is no evidence that the tape of Price was authenticated. A tape was played for the court and, when asked about the contents of the tape, the following exchange took place:
Q. First question, Miss Price, is whether or not this is your voice.
(Tape is played.)
(Tape is stopped.)
Q. Do you recognize the voice on that tape?
A. Can I hear that again, please?
* * *
Q. My question is, do you recognize the voice?
A. Not really, to be honest with you.
Q. You don't recognize the voice?
A. I know I cussed him out on the phone.
Q. Do you recognize the voice at all?
A. It sounds like me, but, honest to God, there's a possibility it may not be me, because my voice is not that high.
* * *
Q. You know your voice better than anyone in the world.
A. It doesn't sound like my voice, but I know I have cussed him out and left a message, yes.
(Tr. 43-44.)
 {¶ 40} With respect to Huggard, there is no evidence in the record that a tape of a phone call made by Huggard even exists. Further, appellant has failed to overcome the presumption that the failure to admit the tapes into evidence was a strategic decision. Both Price and Huggard testified that they called appellant and to the content of their conversations. Admission of the tapes may have provided support for the state by corroborating Price's and Huggard's testimony about the events that happened on and surrounding October 6, 2004.
 {¶ 41} As for the second prong of Strickland, appellant is unable to show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. The trier of fact, in this case the trial court, was well aware of the fact that phone calls were made to appellant by both Price and Huggard. Price testified that she called appellant between five and ten times, and that she yelled and cursed at appellant during these phone calls. Huggard testified that he called appellant, and he testified that he threatened appellant, although it is unclear as to whether the threat was made in person or via a telephone conversation. Given Price's and Huggard's testimony regarding the phone calls, and the other evidence surrounding appellant's guilt, appellant has failed to demonstrate that, but for trial counsel's failure to admit the tapes into evidence, there exists a reasonable probability that he would have been acquitted of the aggravated menacing and disorderly conduct charges.
 {¶ 42} Appellant contends that it was error for his trial counsel to fail to cross-examine Price and Huggard about their prior criminal records. In reliance, appellant has attached a printout from the Franklin County Municipal Court Courtview website indicating that persons named Priscilla Price and Robert Huggard have been named defendants in various cases. However, not only are these printouts not part of the record on appeal, appellant has failed to establish that the names in the Franklin County Municipal Court Courtview database are in fact the same persons that testified in this matter, and appellant has failed to demonstrate how this information could have been used and whether or not it was even admissible. Thus, appellant has failed to establish that his trial counsel's performance was deficient with respect to her failure to cross-examine Price and Huggard about their prior criminal records because he has failed to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 693.
 {¶ 43} Appellant also argues that his counsel's performance was deficient for failing to object to leading questions. As argued by appellee, appellant failed to identify those questions with which he takes issue. Further, our test is whether counsel's error, if it was in fact an error and not simply trial strategy, was so serious that she was not functioning as counsel and appellant was deprived of a fair trial. In this case, even if counsel should have objected, and even if the trial court should have sustained such an objection, the remaining testimony by Price and the other witnesses concerning the events that transpired on and around October 6, 2004, if believed, weighed in favor of appellant's conviction. Thus, we cannot say any deficiency by appellant's counsel with regard to Price's and Huggard's testimony deprived appellant of a fair trial.
 {¶ 44} Accordingly, we overrule appellant's third assignment of error.
 {¶ 45} For the foregoing reasons, appellant's three assignments of error are overruled, and the judgments of the Franklin County Municipal Court are hereby affirmed.
Judgments affirmed.
Klatt, P.J., and French, J., concur.
[1] In one brief filed by appellant, he argues that the record does not include a written jury waiver. However, the record does in fact contain a jury waiver, and appellant's counsel conceded this issue at oral argument.