[Cite as *State v. Landrum*, 2016-Ohio-5666.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150718 |
| | | TRIAL NO. 15CRB-24674 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| CANDACE LANDRUM, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 7, 2016

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Heidi Rosales*, Senior Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Marguerite Slagle*, Assistant Public Defender, for Defendant-Appellant.

**FISCHER, Presiding Judge.**

{¶1} The sole issue in this appeal is whether defendant-appellant Candace Landrum's aggravated-menacing conviction was supported by sufficient evidence and was not against the manifest weight of the evidence with regard to the victim's belief that Landrum would cause her serious physical harm. Landrum's actions in running toward the victim, while brandishing a knife and yelling threats, along with the victim's testimony that she was in fear and felt threatened, meets the belief-of-serious-physical-harm element. Thus, we affirm.

{¶2} The state charged Landrum with aggravated menacing stemming from an altercation with Landrum's niece, the victim. The matter proceeded to a bench trial. At trial, the victim recounted that the day prior to the incident at issue, Landrum had been involved in a confrontation with the victim and her family, in which Landrum had called the police. The following day, the victim's friend, Kesha Washington, drove the victim, the victim's three-year-old daughter, the victim's sister, and the victim's three-year-old niece to the victim's sister's home. The victim's sister lived near Landrum. While the victim was exiting from the car, Landrum came running toward her and pulled a butcher knife out of her pants. According to the victim, Landrum threatened: "to beat my A, she was going to cut me * * *." Landrum threw the knife on the ground, but the threats continued. According to the victim, her sister and cousin got in between them and Landrum called the police.

{¶3} Washington also testified at trial and corroborated the victim's story that Landrum had come running towards the victim with a butcher knife in a

2

threatening and angry manner. Washington testified that she had recovered the thrown knife and had placed it in her car to keep it out of reach.

{¶4} The state then presented testimony from the police officer who had responded to the scene. The officer testified that the victim had reported to him that Landrum had threatened her with a knife, and, as a result, Landrum was arrested.

{¶5} Landrum was the sole defense witness. She conceded in her testimony that she had been angry when she saw Washington drive up with the victim because of the confrontation from the day before. Landrum testified that she confronted the group exiting from the car to ask Washington why she would bring the victim to the area the day after they had been in an altercation. But, according to Landrum, when Landrum confronted the victim and Washington, the victim's mother, Landrum's sister, pulled up in her car and gave the victim a gun. The victim then stated, "Aunt Coke, I'm going to shoot you." At one point, Landrum stated that she had the event "on camera," although Landrum offered no video evidence at trial. Landrum denied having a butcher knife that day and testified that she does not cook and owns no knives.

{¶6} The trial court found Landrum guilty and sentenced her to 180 days in jail, suspended 179 days, and sentenced her to time served. The trial court imposed six months of community control and a mental-health assessment as ordered by the probation department. The trial court stayed its sentence pending appeal.

{¶7} Landrum appeals the trial court's judgment in one assignment of error, asserting that the trial court erred in convicting her of aggravated menacing because the evidence was insufficient and the finding of guilt was against the

manifest weight of the evidence with regard to whether the victim believed that Landrum would cause her serious physical harm.

{¶8} When reviewing a challenge to the sufficiency of the evidence, we must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the offenses proved beyond a reasonable doubt. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. To reverse a conviction on manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *See State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997).

{¶9} R.C. 2903.21(A) defines the crime of aggravating menacing and provides in relevant part that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person[.]" In order to prove aggravated menacing, the state must show that the victim had a subjective belief of fear of serious physical harm. *In re Amos*, 3d Dist. Crawford No. 3-04-07, 2004-Ohio-7037, ¶ 21-23; *In re Fugate*, 10th Dist. Franklin No. 01AP-1195, 2002-Ohio-2771. Evidence of a person's belief that an offender will cause serious physical harm can be proven with circumstantial evidence. *See State v. Crews*, 10th Dist. Franklin No. 00AP-1391, 2001 Ohio App. LEXIS 2937, *9 (June 26, 2001).

{¶10} In *Fugate*, the Tenth Appellate District held the evidence was insufficient to sustain an aggravating-menacing conviction where a student told an

4

instructor that he would bring a gun to school and shoot another instructor—the victim. The victim testified that the student's threat against her made her feel "uncomfortable" and "surprised." *Fugate* ¶ 7-9. Similarly, the Eighth Appellate District found that the evidence was insufficient to prove that the defendant committed aggravating menacing after a road-rage incident in which the defendant flashed a gun at the victim, because the victim offered no testimony as "to any subjective belief that [the defendant] would cause [the victim] serious physical harm." *City of Garfield Hts. v. Greer*, 8th Dist. Cuyahoga No. 87078, 2006-Ohio-5936, ¶ 7.

{¶11} In contrast, the Tenth Appellate District held that sufficient evidence existed on the issue of whether the victim believed that the defendant would cause her serious physical harm where the defendant, who was an acquaintance of the victim, showed up at the victim's home, lifted up his shirt to reveal a firearm, and then left. *State v. Goodwin*, 10th Dist. Franklin Nos. 05AP-267 and 05AP-268, 2006-Ohio-66. The victim testified that she had been surprised initially by the defendant's actions and did not feel threatened. *Id.* at ¶ 21-22. The victim discovered later through a mutual friend that the defendant had come to the victim's home because the defendant had thought the victim burglarized his home, so the victim then called the defendant and "yelled and cursed at him." *Id.* at ¶ 23. The victim testified that once she discovered the reason for the defendant's actions, she felt fearful.

{¶12} As to the victim's subjective belief that Landrum was going to cause her serious physical harm, the state questioned the victim as follows:

Q: And you stated that [Landrum] was saying that she was going to beat you up. Did you believe her when she was saying those things?

A: Oh yeah, I did.

Q: And why did you believe her?

A: Because like the – her rage and her emotions, everything just had me in fear, like she was really, really ready to do something to me.

{¶13} The victim then testified, "Like I wasn't scared. I was more so scared for my daughter, what she was thinking. Because she was already afraid to walk past her house from the incident before, leaving school. * * * I wasn't like scared like, oh, because that's my aunt. But she did fear me. * * * I had fear." On cross-examination, the defense attorney returned to the issue of the victim's state of mind: "On direct, you said you weren't really scared." The victim responded, "No. I said I feared."

{¶14} On redirect, the following exchange took place between the prosecutor and the victim:

Q: And you've stated that you weren't scared but you were afraid. What do you mean by that?

A: I mean, like she probably was just to, you know, put me in a state to be scared. Because that's my aunt, I wasn't expecting for her to use [the knife]. Let me just say that. I wasn't expecting for her to use it, which before – she had pulled it out on me the day before, too.

But it wasn't really – I wasn't expecting for her to actually use it.

Q: Okay. So on direct, when I asked about did you believe her –

A: And I said yes.

Q: So you did believe –

A: Yes.

Q: --that she was going too—

A: Yeah. Like, I mean, I believe she just was trying to intimidate me with it, you know, like put fear in me, like – but I didn't feel like she was really going to use it.

Q: Okay. So did you feel like – did you feel threatened at all—

A: Yes.

{¶15} The portion of the victim's testimony stating that she did not expect Landrum to "actually use" the knife because of their blood relationship does not overshadow her consistent assertions that she feared Landrum and felt threatened when Landrum ran up to her with the butcher knife, threatening to "beat her A" and to "cut" her. This is not a case where the victim failed to testify regarding any subjective belief that serious physical harm would result from the defendant's actions, or where the victim merely felt surprised or uncomfortable due to the defendant's actions. *See Greer*, 8th Dist. Cuyahoga No. 87078, 2006-Ohio-5936, at ¶ 7; *Fugate*, 10th Dist. Franklin No. 01AP-1195, 2002-Ohio-2771, at ¶ 7-9; *Amos*, 3d

Dist. Crawford No. 3-04-07, 2004-Ohio-7037, at ¶ 22 (where the victim indicated that she did not experience any fear and did not feel threatened).

{¶16} The victim testified four times that she had been in a state of fear because of Landrum's actions. The victim testified that she believed Landrum would hurt her because of Landrum's "rage." At the end of her testimony, the victim stated unequivocally that she felt threatened. Viewing this evidence in a light most favorable to the prosecution, which we are required to do in reviewing the sufficiency of the evidence, we conclude that a rational trier of fact could have found that the victim believed Landrum was going to cause her serious physical harm. *See Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus; *Goodwin*, 10th Dist. Franklin Nos. 05AP-267 and 05AP-268, 2006-Ohio-66, at ¶ 22 (where the victim testified that she was fearful and felt threatened, sufficient evidence existed to sustain an aggravating-menacing conviction).

{¶17} Nor did the trier of fact clearly lose its way and create a manifest miscarriage of justice in finding Landrum guilty. *See Thompkins*, 78 Ohio St.3d at 386-387, 678 N.E.2d 541. The trial court was free to accept the victim's version of the events and reject Landrum's story that the victim had threatened her with a gun, especially where Landrum admitted to being angry upon seeing the victim, and the victim's version was corroborated by another witness at the scene. *See State v. Sims*, 1st Dist. Hamilton Nos. C-150252 and C-150253, 2015-Ohio-4996, ¶ 11. We are also mindful that a trial court, which sits as a trier of fact in a bench trial, remains in the best position to judge witness credibility and can freely reject testimony. *See State v. Railey*, 2012-Ohio-4233, 977 N.E.2d 703, ¶ 14 (1st Dist.).

**{¶18}** Having determined that Landrum's argument is without merit, we overrule Landrum's sole assignment of error. We affirm the trial court's judgment.

Judgment affirmed.

**STAUTBERG, J.,** concurs.

**DEWINE, J.,** concurs in judgment only.

Please note:

The court has recorded its own entry on the date of the release of this opinion.