OPINION
{¶ 1} Gerald Bently appeals from his conviction and sentence following a bench trial in Dayton Municipal Court on misdemeanor charges of domestic violence, criminal damaging, and child endangering.
 {¶ 2} Bently advances three assignments of error on appeal. First, he contends his convictions were not supported by legally sufficient evidence. Second, he argues that his convictions were against the manifest weight of the evidence. Third, he asserts that he was denied his right to the effective assistance of counsel.
 {¶ 3} The present appeal stems from an October 19, 2002, incident involving Bently and Brandie White, his ex-girlfriend. According to White's trial testimony, she was driving to Bently's house with her two children in the back seat of her car at approximately 11:30 p.m. The purpose of the trip was to drop off one of the children for a weekend visit with Bently, who is the child's father. As White passed a BP gas station, she saw Bently standing outside with three other people. White pulled into the gas station and stopped beside Bently. A profanity laced argument ensued over the visitation issue, and White ultimately told Bently that he would not be seeing his daughter anymore. In response, White claimed that Bently threatened to "beat [her] ass" and rushed toward the driver's side of her car, where she remained seated. He then punched out the closed driver's side window, spraying broken glass into the vehicle, and grabbed White's shirt and hair. White put her car in reverse and attempted to leave while Bently ran alongside the vehicle still holding her shirt. After the shirt ripped, Bently abandoned his foot pursuit and followed White to the police station in another car.
 {¶ 4} Bently provided the trial court with a different version of events. Bently testified that he was outside of his car at a friend's house when White "pulled up out of nowhere." According to Bently, White began screaming at him and reached out of her car and ripped a chain from his neck. In response, he reached through White's open car window to retrieve the chain, but she began closing the window on his arm. Bently testified that the window broke as he tried to remove his arm before the window closed. Bently's version of events largely was corroborated by two of his companions that night, Nashanda Moore and Natasha Spears.
 {¶ 5} After hearing the evidence, the trial court dismissed certain charges against Bently but found him guilty of misdemeanor domestic violence, three counts of criminal damaging, and endangering children. The trial court imposed thirty-day suspended sentences and fines and placed Bently on two years of probation. The trial court then stayed execution of Bently's sentences pending the outcome of this appeal.
 {¶ 6} In his first assignment of error, Bently contends his convictions were not supported by legally sufficient evidence. When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law.State v. Hawn (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 7} Bently first challenges his conviction for domestic violence under R.C. § 2919.25(C), which provides: "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." Bently argues that his domestic violence conviction cannot stand for two reasons. First, the State never proved that he was the father of one of the two children in the back seat of Brandie White's car. Second, the State never proved that he ever had resided with White or the two children.
 {¶ 8} Upon review, we find no merit in either argument. Bently's relationship to the children in White's car has no relevance to his domestic violence conviction. As the State properly notes, the victim of the domestic violence in this case was White, not the two children. Thus, for purpose of the domestic violence charge, it is immaterial whether Bently was the father of, or had resided with, either child. With regard to Bently's second argument, it is also immaterial whether he and White had resided together. The domestic violence statute defines the phrase "family or household member" to include "the natural parent of any child of whom the offender is the other natural parent[.]" R.C. § 2919.25(F)(1)(b). Regardless of whether Bently was the father of either child in White's car (an issue that we will discuss, infra), Bently and White both testified that they did have a child together. (Transcript at 5, 55). Thus, she fits within the definition of a "family or household member" set forth above even if she never formally resided with Bently. Accordingly, we find no merit in his claim that the domestic violence conviction is based on legally insufficient evidence.
 {¶ 9} Bently next challenges the sufficiency of the evidence to support his convictions for criminal damaging. The criminal damaging statute provides that no person knowingly, by any means, "shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent." R.C. § 2909.06(A)(1). Criminal damaging is a second degree misdemeanor, unless the violation involves a risk of physical harm to any person, in which case the offense is a misdemeanor of the first degree. R.C. § 2909.06(B).[1] In the present case, the criminal damaging involved the breaking of White's car window, and the State charged the crime as a first-degree misdemeanor based on a risk of physical harm to White and her two children.
 {¶ 10} In his challenge to the sufficiency of the evidence, Bently first argues that an expert witness for the prosecution, Thomas Kent, should not have been allowed to testify that White's car window was rolled up when it was broken. Bently appears to assert that Kent, who was an automobile glass installer, was not qualified to render such an opinion. We disagree. Pictures of the car reveal broken glass throughout the interior. Kent explained that if the window had been rolled completely down, the glass would have stayed inside the door panel. (Transcript at 25-26). Given that the glass sprayed the inside of the vehicle, Kent surmised that the window was at least partially rolled up when it broke. (Id.). In light of his employment as an automobile glass installer, we believe Kent was qualified to render this opinion. We note too that Kent's opinion is entirely consistent with the testimony offered by both Bently and White. Indeed, neither party suggested that the window was rolled completely down when it broke.
 {¶ 11} Bently next argues that his criminal damaging convictions were improper because the two children did not have a property interest in White's car. This argument misconstrues the statute. As noted above, R.C. § 2909.06(A)(1) makes it a crime to cause or create a substantial risk of physical harm to any property of another. Additionally, if the offender's conduct creates a risk of physical harm to "any person," it is a first-degree misdemeanor. In the present case, the property at issue was White's car window, and the crime was a first-degree misdemeanor because it created a risk of physical harm to her children, who had broken glass pieces land on them. Contrary to Bently's argument, nothing in the statute requires the children to have an ownership interest in White's car.
 {¶ 12} Finally, Bently challenges the sufficiency of the evidence to support his conviction for child endangering. The applicable statute provides that no parent of a child under eighteen years of age shall create a substantial risk to the health or safety of the child by violating a duty of care, protection or support. R.C. § 2919.22(A). Bently argues that the State failed to prove he was the father of either of the children in White's car. Upon review, we find sufficient evidence to support Bently's conviction. Bently's argument is belied by the record, which is replete with testimony to support a finding that his daughter was in White's car. (Transcript at 7, 9-10, 34-36, 41, 45). Accordingly, we overrule his first assignment of error.
 {¶ 13} In his second assignment of error, Bently argues that his convictions were against the manifest weight of the evidence. When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 14} In the present case, Bently asserts, without elaboration, that the State's evidence "is not believable." We disagree. Although Bently testified at trial and insisted that the car window broke accidentally as he removed his hand, his convictions were not against the weight of the evidence. The trial court essentially had to choose between the competing versions of events described by Bently and White. In so doing, the trial court was free to disbelieve the testimony offered by Bently and his companions. Having reviewed the record, we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice. The evidence does not weigh heavily against Bently's convictions. Accordingly, we overrule his second assignment of error.
 {¶ 15} In his third assignment of error, Bently asserts that he was denied his right to the effective assistance of counsel. Such claims are assessed under the two-part test of Stricklandv. Washington (1984), 466 U.S. 668. "To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding."State v. Madrigal, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448. When evaluating an ineffective assistance of counsel claim, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, supra, at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v.Bradley (1989), 42 Ohio St.3d 136, 142.
 {¶ 16} In this case, Bently argues that his attorney provided ineffective assistance by failing to object to the testimony of Thomas Kent and by failing to cross examine him. Given Kent's inability to say how the car window broke, Bently argues that he should not have been permitted to testify. Although we believe Kent's testimony was marginally helpful at best, defense counsel did not provide constitutionally ineffective assistance by failing to object or by failing to conduct cross examination.
 {¶ 17} While Kent could not say what caused the car window to break, he testified that it was at least partially rolled up when it broke. He reached this conclusion based on the presence of shattered glass inside the car. Kent explained that if the window were completely down, the glass would have remained inside the door panel. Notably, however, neither party had suggested the window was completely down. Thus, this aspect of Kent's testimony was of limited value. We question too whether expert testimony is required to establish that a window must be partially rolled up for glass to fall inside a car. Even if Kent's testimony was unnecessary, however, we see no prejudice to Bently. Kent's brief testimony was consistent with both parties' version of events, and he added little to what was essentially a credibility dispute for the trial court to resolve as the trier of fact. As a result, Bently has not established a violation of his right to the effective assistance of counsel. His third assignment of error is overruled.
 {¶ 18} The judgment of the Dayton Municipal Court is affirmed.
Fain, P.J., and Wolff, J., concur.
[1] "The creation of a risk of physical harm to a person does not merely enhance the penalty. Instead, it transforms the crime itself by increasing its degree. In such a case, it is an essential element of the offense[.]" State v. Hackett (Mar. 26, 1999), Trumbull App. No. 97-T-0232.