[Cite as *State v. Sims*, 2015-Ohio-4996.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-150252 |
| | | C-150253 |
| Plaintiff-Appellee, | : | TRIAL NOS. 15CRB-3272A |
| | | 15CRB-3272B |
| vs. | : | |
| | : | |
| MARCUS SIMS, | | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  December 4, 2015

*Paula Boggs Muething*, City Solicitor, *Heidi S. Rosales*, Interim City Prosecutor, and *Christopher Liu*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}   Defendant-appellant Marcus Sims appeals the judgments of the trial court convicting him of criminal damaging and domestic violence, both misdemeanors of the first degree, and sentencing him to consecutive 180-day prison terms.  Sims argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.  Sims further argues that the trial court erred in convicting him of criminal damaging as a first-degree misdemeanor where the affidavit, complaint, and judgment of conviction did not state the degree of the offense or the additional element of creation of risk of physical harm to a person, elevating the seriousness of the offense.  Because we find no merit in Sims's arguments, we affirm the judgments of the trial court.

### Factual Background

{¶2}   The factual events underlying Sims's prosecution occurred among Sims, his girlfriend, Connie Heflin, and Heflin's acquaintance, Tommy Neil.  Sims and Heflin lived together in an apartment, and one morning, Heflin left the apartment on foot to head to her job.  Heflin accidently left her work hat behind, so, according to Heflin, she called Neil to give her a ride back to the apartment.  Neil waited in the car while Heflin went inside to retrieve the hat.

{¶3}   According to Heflin, when she returned to the apartment, Sims jumped out at her from inside a closet, grabbed her, slammed her against the wall, choked her, and threw her down on the floor.  Heflin eventually escaped out of the apartment, and Sims then threw a bag of clothes at her, causing Heflin to fall down the stairs.  Heflin ran back to Neil's car and got into the passenger seat.  She had blood on her head.  Sims continued to pursue Heflin out to Neil's car with a utility

knife in his hand, and he punched the passenger-side window, shattering glass on Heflin's face.

{¶4}   The city of Cincinnati prosecuted Sims for criminal damaging and domestic violence, and the matter proceeded to a bench trial. In addition to Heflin's testimony, the city also presented Neil as a witness, who corroborated Heflin's story as to the events that occurred outside the apartment. Sims testified in his defense, denying that he had physically assaulted Heflin inside the apartment, but he admitted that he had been angry with Heflin that day because he had suspected her of cheating. According to Sims, Heflin had left the apartment two hours before her scheduled work shift began. Sims had tried to find Heflin to return her hat, but he could not find her. Sims also admitted to punching Neil's car window.

{¶5}   The trial court found Sims guilty of criminal damaging and domestic violence and sentenced him to consecutive 180-day prison terms. Sims has appealed.

## Weight and Sufficiency of the Evidence

{¶6}   In his first assignment of error, Sims argues that his convictions for first-degree-misdemeanor criminal damaging and domestic violence were not supported by sufficient evidence and were contrary to law.

{¶7}   In a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution in determining whether any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a challenge to the weight of the evidence, we sit as a "thirteenth juror," and we must review the entire record, weigh the evidence,

consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶8} The trial court sentenced Sims on the criminal-damaging offense in accordance with a first-degree misdemeanor, which required proof that Sims knowingly caused or created a substantial risk of physical harm to another's property without consent, and that Sims's actions created a risk of physical harm to a person. *See* R.C. 2909.06.

{¶9} Sims admits that he had punched Neil's car window, but he argues that his actions did not create a risk of harm to anyone. We disagree. Heflin and Neil testified that they had been in the car when Sims punched the car window, causing glass to shatter. Sims's actions constitute sufficient evidence to support a first-degree-misdemeanor conviction for criminal damaging, and the conviction is not against the manifest weight of the evidence. *See State v. Bently*, 2d Dist. Montgomery No. 19743, 2004-Ohio-2740, ¶ 11 (risk of physical harm to a woman and her two children created by defendant's actions in smashing a car window while the three sat inside the car).

{¶10} As to his domestic-violence conviction under R.C. 2919.25(A), which prohibits a person from knowingly causing or attempting to cause physical harm to a household or family member, Sims argues that the trial court erroneously relied upon Heflin's testimony, which presented a contradictory version of events. Sims points out that the affidavit and complaint indicate that Heflin had injured her head when Sims punched her. At trial, however, Heflin testified that she had injured her head by falling down the steps, either when Sims had thrown a basket of clothes at

her, or when Heflin had tripped on clothes that had already been thrown outside the apartment. When asked about the inconsistency by defense counsel on cross-examination, Heflin stated that she had been hit by Sims so many times that she struggled to remember every detail.

{¶11} As to the sufficiency of the evidence adduced to support Sims's domestic-violence conviction, Heflin's testimony as to the events that occurred within the apartment constitutes sufficient evidence that Sims violated R.C. 2919.25(A), and the direct cause of Heflin's head injury is immaterial. Heflin testified that Sims had grabbed her, had choked her, and had thrown her down, while the two were still inside the apartment. As to the manifest weight of the evidence, Neil corroborated Heflin's version of events as to what had occurred outside the apartment, including that Heflin had appeared disheveled and injured, and that Sims had come running after Heflin with a utility knife. Given Neil's corroborating testimony, and Sims's admission to punching the car window, the trial court was free to give more weight to Heflin's version of events than Sims's. *See State v. Railey*, 2012-Ohio-4233, 977 N.E.2d 703, ¶ 14 (1st Dist.) (trial court sitting as the trier of fact is in the best position to judge witness credibility and can freely reject testimony). Therefore, the trial court did not lose its way in finding Sims guilty of domestic violence, and properly found all the essential elements of domestic violence beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus; *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶12} We overrule Sims's first assignment of error.

### Absence of Degree of Offense from Complaint and Judgment Entry of Conviction

{¶13} In his second assignment of error, Sims argues that the trial court erred in convicting him of first-degree-misdemeanor criminal damaging where the affidavit, complaint, and judgment of conviction did not contain the degree of the offense or the additional element elevating the seriousness of the offense.

{¶14} Criminal damaging is generally a second-degree misdemeanor, but if the offense creates a risk of physical harm to a person, the offense is a first-degree misdemeanor. *See* R.C. 2909.06(B). Because the aggravating circumstance of creation of a risk of physical harm to a person changes the crime by increasing the degree of the offense, rather than merely enhancing the penalty, that circumstance is an essential element of the offense of which the defendant must be found guilty. *See Bently*, 2d Dist. Montgomery No. 19743, 2004-Ohio-2740, at ¶ 9, fn.1, citing *State v. Hackett*, 11th Dist. Trumbull No. 97-T-0232, 1999 Ohio App. LEXIS 1228 (Mar. 26, 1999).

{¶15} The purpose of a charging instrument, such as a criminal complaint, is to give the defendant adequate notice of the charge. *See State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, ¶ 7. A criminal complaint must contain, in relevant part, "a written statement of the essential facts constituting the offense charged[.]" Crim.R. 3. The written statement "may be in the words of the applicable section of the statute, * * * or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." Crim.R. 7(B). The complaint need not track the exact language of the statute to meet Crim.R. 3. *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 24.

{¶16} Objections regarding defects in a charging instrument must be raised prior to trial, otherwise, an appellate court reviews such defects under a plain-error analysis. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26; *see* Crim.R. 12(C). Plain-error analysis applies when a defendant fails to object that a charging instrument lacks an essential element of the offense. *See Jones* at ¶ 22, relying on *Horner*. Plain error affects a defendant's substantial rights, and "is an error so extreme that it affected the outcome of the proceedings and must be corrected to prevent a manifest miscarriage of justice." *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 31, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraphs two and three of the syllabus; Crim.R. 52(B).

{¶17} In this case, Sims did not object to the contents of the complaint against him prior to trial. The criminal-damaging complaint references R.C. 2909.06, but fails to contain the degree of offense or the language from the statute pertaining to the aggravating circumstance of creation of a risk of physical harm to a person. Nevertheless, the complaint contains the following averment from the police officer: "while victim was sitting in his vehicle Defendant punched out (rt.) front passenger window." The absence of the degree of offense and the state's failure to track the language of the statute with regard to the element of creation of a risk of physical harm to a person in the complaint does not rise to the level of plain error in this case, because the complaint contained the facts necessary to put Sims on notice that the aggravating element applied.

{¶18} In support of his argument that his criminal-damaging conviction as a first-degree misdemeanor must be reversed, Sims cites to R.C. 2945.75(A) and *State*

*v. Tsibouris*, 1st Dist. Hamilton Nos. C-120414 and C-120415, 2014-Ohio-2612. R.C. 2945.75(A) provides:

> When the presence of one or more additional elements makes an offense one of more serious degree: (1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense. (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶19} The Ohio Supreme Court has referred to R.C. 2945.75(A) as a " 'clear and complete statute[.]' " *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, ¶ 14, quoting *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, ¶ 12. When R.C. 2945.75(A)(1) is not followed, R.C. 2945.75(A)(2) operates to change the " 'guilty verdict' " to " 'a finding of guilty of the least degree of the offense charged.' " *McDonald* at ¶ 14, quoting R.C. 2945.75(A)(2).

{¶20} In *Tsibouris*, this court relied on R.C. 2945.75 in reversing a defendant's conviction for disorderly conduct as a fourth-degree misdemeanor, because the jury had not been instructed on the additional elements required to elevate the defendant's conduct from a minor misdemeanor to a fourth-degree misdemeanor, and the verdict form signed by the jury failed to reference either the additional elements or the specific statutory section. *Tsibouris* at ¶ 29-30, citing

*Pelfrey* at syllabus. The *Tsibouris* court relied on *Pelfrey* for the proposition that failure to include language encompassing the aggravating element in the verdict form amounted to plain error. *Tsibouris* at ¶ 30.

{¶21} *Tsibouris* dealt with a jury trial. In this case, Sims was found guilty by the trial court after a bench trial. Thus, the issue becomes whether R.C. 2945.75(A)(2) operates with the same effect in a bench trial as in a jury trial.

{¶22} This court addressed the issue of whether R.C. 2945.75(A)(2) applied in a bench trial in *State v. Wiggins*, 1st Dist. Hamilton No. C-910620, 1992 Ohio App. LEXIS 3469 (July 1, 1992). In *Wiggins*, this court focused on the terms "guilty verdict" as used in R.C. 2945.75(A)(2), and the court concluded that those terms apply to a jury and have no application in a bench trial. The court examined portions of the criminal code and rules of procedure, which associate verdicts with juries, as opposed to findings made after a bench trial. *Id.* at *8, relying on R.C. 2945.171 ("[i]n all criminal cases the verdict of the jury shall be in writing and signed by each of the jurors concurring therein"), Crim.R. 31 (dealing with jury verdicts), and Crim.R. 23(C) ("[i]n a case tried without a jury the court shall make a general finding"). The court also reasoned that "[t]he safeguards established in R.C. 2945.75(A)(2) for jury verdicts are unnecessary when * * * the court, which we can assume is aware of the charge in the indictment and the applicable law, returns a finding of guilt after a bench trial." *Id.*

{¶23} The Fourth Appellate District reached the opposite conclusion from that in *Wiggins* and applied R.C. 2945.75(A)(2) in a bench trial. *See State v. Floyd*, 4th Dist. Lawrence No. 08CA33, 2009-Ohio-6823, ¶ 27. In *Floyd*, the Fourth Appellate District vacated the defendant's conviction for fourth-degree-misdemeanor

9

disorderly conduct, because the trial court's judgment of conviction failed to include the degree of the offense or the aggravating element enhancing the offense from a minor misdemeanor to a fourth-degree misdemeanor. *Id.* at ¶ 27. In reaching its holding, the court in *Floyd* relied upon a decision of the Eighth Appellate District, *State v. Sims*, 8th Dist. Cuyahoga No. 89261, 2007-Ohio-6821, ¶ 20. The Eighth Appellate District reasoned that a trial court issues a "judgment of conviction" in accordance with Crim.R. 32(C), which "is functionally equivalent" to a verdict issued by a jury. *Sims* at ¶ 20. At the time the Eighth Appellate District issued its decision, former Crim.R. 32(C) provided: "A judgment of conviction shall set forth the plea, the verdict, or findings, upon which each conviction is based, and the sentence."

{¶24} We do not find the reasoning set forth in *Floyd* and *Sims* to be persuasive on the issue of whether R.C. 2945.75(A)(2) applies to a bench trial, and we reaffirm the reasoning in *Wiggins* in holding that R.C. 2945.75(A)(2) has no applicability in a bench trial. R.C. 2945.75(A)(2) applies to "[a] guilty verdict." Under a plain-meaning analysis, "verdict" means a decision issued by a jury. *See* Garner, *A Dictionary of Modern Legal Usage* 913 (2d Ed.1995) ("[j]uries, not judges, hand down verdicts[.]"); *Black's Law Dictionary* 1592 (8th Ed.2004) (defining "guilty verdict" as "[a] jury's finding that a defendant is guilty of the offense charged."). Moreover, the Ohio Supreme Court has distinguished between a finding of guilt after a bench trial, and a guilty verdict after a jury trial. *See State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, ¶ 7, 12, 16. Even former Crim.R. 32(C), relied upon in *Floyd*, distinguished between a "verdict" and "findings."

{¶25} Because Sims was found guilty by the trial court, R.C. 2945.75(A)(2) does not apply. Moreover, the complaint against Sims contained the facts necessary to put Sims on notice that the aggravating element of creation of a risk of physical harm to a person applied. Thus, the trial court did not err in convicting Sims of first-degree-misdemeanor criminal damaging. We overrule Sims's second assignment of error.

## Conclusion

{¶26} We affirm the judgments of the trial court convicting Sims of criminal damaging as a first-degree misdemeanor and of domestic violence.

Judgments affirmed.

CUNNINGHAM, P.J., and STAUTBERG, J., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.