[Cite as *State v. Chasteen*, 2024-Ohio-909.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230174 |
| | | TRIAL NO. 22CRB-8342 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| BRENT CHASTEEN, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 13, 2024


*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Amber H. Daniel*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Palmer Legal Defense* and *Stephen E. Palmer*, for Defendant-Appellant.

**Crouse, Judge.**

{¶1}   Defendant-appellant Brent Chasteen appeals his conviction for one count of sexual imposition following a jury trial. Chasteen argues that the trial court erred by failing to instruct the jury on the meaning of "purposely" and that his trial counsel was ineffective for failing to request such an instruction. Chasteen also argues that the trial court erred in allowing the two counts of sexual imposition alleged against him to be consolidated into a single trial because the two counts pertained to separate instances of alleged conduct against two distinct victims. For the following reasons, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶2}   At the time of the conduct at issue, Chasteen worked as a licensed massage therapist at Real Wellness in Cincinnati.

{¶3}   On March 1, 2022, E.B. visited Real Wellness for a massage scheduled with Chasteen. The appointment was at the end of the day, and no other employees appeared to be on site. The massage started normally. E.B. alleged that, during the massage, Chasteen asked if she had experienced childhood trauma or abuse. E.B. stated that she did not want to discuss it. E.B. alleged that throughout the course of the massage, Chasteen inappropriately touched her buttocks in a "weird" way, with his skin directly in contact with hers even though she was still wearing underwear. E.B. testified that Chasteen pushed his hand in between her "butt cheeks," near her anus. E.B. further testified that later in the massage, Chasteen brushed against the sides of her breasts and the outer part of her vagina. Later, according to E.B., Chasteen asked her if she wanted a "sexual release." E.B. told him no, but Chasteen went on to say that he thought it would help and asked about her sex life with her boyfriend. Chasteen

finished the massage, and then E.B. paid and left.

{¶4} A couple of weeks later, after seeing a post online about another person's bad experience with a different massage therapist, E.B. reported the incident with Chasteen to the state medical board. After the medical board followed up, E.B. was referred to the local police, who took her complaint against Chasteen.

{¶5} On March 30, 2022, M.V. went to an appointment with Chasteen at Real Wellness. She had previously had a couple's massage performed by Chasteen, and she had seen him alone at a mid-afternoon appointment. When M.V. saw Chasteen on March 30, the appointment was later in the evening, and no one else was on the premises. The massage started normally, with M.V. lying on the massage table on her stomach. About halfway through, Chasteen had M.V. flip over on her back and continued the massage, as expected. M.V. testified that, while Chasteen was massaging her leg, he asked her if she wanted a "happy ending." M.V. told him that she was "not interested in that at all." M.V. testified that shortly after that, Chasteen rubbed up her leg, moved her panties to the side, and began to rub in the center of her vaginal area. M.V. testified that she felt uncomfortable, but she was too afraid to leave or take any other action to end the massage. When the massage ended, M.V. paid and left.

{¶6} M.V. testified that after leaving, she phoned two friends to tell them what happened. She then drove to the Hyde Park police station to report the incident. While M.V. was at the police station, Chasteen called and apologized for making M.V. feel uncomfortable. M.V. put the call on speaker for the police at the station to hear. M.V. produced her telephone records corroborating that she had received a call from the Real Wellness telephone number that evening.

{¶7} Chasteen was eventually charged with two counts of sexual imposition,

in violation of R.C. 2907.06(A)(1), each a third-degree misdemeanor. Chasteen was charged in the case numbered 22CRB-8342 with sexual imposition against M.V. He was charged in the case numbered 22CRB-8343 with sexual imposition against E.B. The state moved to have the trials for the two counts joined. Over Chasteen's objection, the trial court joined the charges for trial. Following a jury trial, Chasteen was convicted of one count of sexual imposition against M.V. The jury found Chasteen not guilty as to E.B.

{¶8} This appeal timely followed.

## II. Analysis

{¶9} On appeal, Chasteen raises three assignments of error for our consideration. First, Chasteen argues that the trial court erred in omitting a jury instruction on the mens rea element of "purposely." Second, Chasteen argues that his trial counsel was ineffective for failing to request such an instruction. Finally, Chasteen argues that the trial court erred in granting the state's motion to join the two charges in a single trial.

### A. Instruction on "Purposely"

{¶10} In his first assignment of error, Chasteen argues that the trial court erred by not including a jury instruction providing a definition of "purposely," which is the correct mens rea element to apply when determining if "sexual contact" occurred.

{¶11} Chasteen concedes that he did not raise the matter before the trial court, and therefore he has waived all but plain error. *State v. Samueal*, 1st Dist. Hamilton No. C-220641, 2023-Ohio-3322, ¶ 16, citing *State v. West*, 168 Ohio St.3d 605, 2022-Ohio-1556, 200 N.E.3d 1048, ¶ 22. To show plain error, the "appellant must

4

demonstrate that 'an error occurred, that the error was obvious, and that there is "a reasonable probability that the error resulted in prejudice," meaning that the error affected the outcome of the trial.' " *Id*. at ¶ 17, quoting *State v. Bailey*, 171 Ohio St.3d 486, 2022-Ohio-4407, 218 N.E.3d 858, ¶ 8, quoting *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 66.

**{¶12}** R.C. 2907.06(A)(1) provides, in relevant part, that: "No person shall have sexual contact with another, not the spouse of the offender, * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard."

**{¶13}** Under R.C. 2907.01(B), " '[s]exual contact' means any touching of an erogenous zone of another * * * for the purpose of sexually arousing or gratifying either person." It is well-established that "[t]he mens rea of purpose applies to the sexual-contact element of sexual imposition." *Phipps v. State*, 2018-Ohio-720, 107 N.E.3d 754, ¶ 19 (1st Dist.), citing *State v. Dunlap*, 129 Ohio St.3d 461, 2011-Ohio-4111, 953 N.E.2d 816, ¶ 23. The critical question in this appeal is whether the trial court committed plain error by failing to include an instruction on the mens-rea standard of "purposeful" conduct.

**{¶14}** The prosecuting attorney, in closing arguments, correctly defined sexual contact as including a purpose of sexual gratification. The state properly connected the evidence to the element of purpose:

> He also asked [E.B.] if she wanted a sexual release. This is showing that all of this was sexual contact.
>
> * * *
>
> He also asked [M.V.] if she wanted a happy ending. He did this before

rubbing in her vagina, and she told him no, and he did it anyway.

* * *

You also have to know that it was for some kind of gratification. It can be either person. It is obvious that he was doing this for gratification when he is asking, do you want a happy ending, do you want a sexual release. He is doing this for sexual gratification.

{¶15} A substantial theme of defense counsel's closing argument was that the jury must acquit Chasteen unless they believe his purpose in the alleged touching was sexual gratification. Defense counsel argued, for instance:

The specific "touching" in that question has to be for the purpose of sexual gratification. That means in your deliberations if you are thinking, well, maybe he, Mr. Chasteen, did touch her breast, or maybe Mr. Chasteen did touch the vulvas, and if you don't believe anything else, that's still not a guilty, because it has to be for the purpose of sexual gratification. That's what makes it this specific crime.

{¶16} The trial court did not instruct the jury on the definition of "purpose" or "purposefully." However, the trial court did instruct the jury that, "Sexual contact means any touching of an erogenous zone of another, including, without limitation, the thigh, genitals, buttocks, pubic region, or, if the person is a female, a breast[,] for the purpose of sexually arousing or gratifying either person."

{¶17} During its deliberations, the jury sent a question to the court: "Is there a specific definition for sexual gratification? If yes, what is it?" The court informed the jury:

And the answer to the question is no. There is no specific definition for

sexual gratification. The jury instructions you received contain the specific statutory definitions which are set forth in the jury instructions. Now, if a term is not defined for you, it is incumbent upon you to rely upon your individual and collective knowledge and understanding of the meaning of the term at issue.

{¶18} "As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged, and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error." *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶ 17, quoting *State v. Adams*, 62 Ohio St.2d 151, 153, 404 N.E.2d 144 (1980). However, "the failure to instruct on each element of an offense is not necessarily reversible as plain error." *Id*. A reviewing court "must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions." *Id*.

{¶19} The Fifth District has held that it is not plain error for the trial court to omit a definition of "purpose" when instructing the jury on the definition of sexual contact. *State v. Smith*, 5th Dist. Stark No. 2008CA00097, 2009-Ohio-1759, ¶ 41. Other districts have reached the same conclusion. *See State v. Edwards*, 9th Dist. Lorain No. 12CA010274, 2013-Ohio-3068, ¶ 24; *State v. Ocasio*, 9th Dist. Lorain No. 15CA010773, 2016-Ohio-4686, ¶ 13; *State v. Jay*, 8th Dist. Cuyahoga No. 91827, 2012-Ohio-914, ¶ 11-12; *State v. Wrasman*, 3d Dist. Auglaize No. 2-20-03, 2020-Ohio-6887, ¶ 47-48.

{¶20} Chasteen argues that in *Wrasman*, unlike in his case, the trial court

provided an instruction that, "[w]here a term has not been defined, [the jury] must give that term [its] common and ordinary meaning." *See Wrasman* at ¶ 48. Multiple holdings from other districts have found no plain error even without such an instruction. Nevertheless, the trial court did provide such an instruction in this case. When the jury inquired about the definition of "sexual gratification," the court provided the exact sort of instruction that Chasteen argues is required: "if a term is not defined for you, it is incumbent upon you to rely upon your individual and collective knowledge and understanding of the meaning of the term at issue."

**{¶21}** While it would have been preferable for the trial court to provide an instruction on the definition of "purposely," Chasteen did not request such an instruction at trial. Taking the instructions to the jury as a whole and the entire record, a "manifest miscarriage of justice" did not occur as a result of the omission. *See Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, at ¶ 17. Accordingly, the trial court did not commit plain error in omitting a specific definition of "purposely" from the jury instructions. Chasteen's first assignment of error is overruled.

### B. Ineffective Assistance of Counsel

**{¶22}** In his second assignment of error, Chasteen argues that his trial counsel was constitutionally ineffective for failing to object to the jury instructions because of the omission of a definition of "purposely."

**{¶23}** In evaluating a claim of ineffective assistance of counsel, "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio

St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "In reviewing an ineffective assistance of counsel claim, we consider 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *State v. Bell*, 1st Dist. Hamilton No. C-210494, 2023-Ohio-1010, ¶ 9, quoting *Strickland* at 686.

**{¶24}** Having determined that the failure to give the jury instruction on "purpose" is not plain error, the failure of trial counsel to request such an instruction is unlikely to be "conduct [that] so undermine[s] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *See Bell* at ¶ 9. Additionally, although trial counsel did not request an instruction, counsel did argue strongly on the point that Chasteen's conduct must be for the purpose of sexual gratification. The state, in turn, presented a compelling argument showing that Chasteen's conduct met the purpose requirement.

**{¶25}** Because Chasteen has not shown that prejudice arose from counsel's performance, we overrule his second assignment of error.

### *C. Joinder of Charges*

**{¶26}** In his third assignment of error, Chasteen argues that the trial court erred by granting the state's motion to join the two charges for trial. Chasteen preserved this issue for appellate review by opposing the state's motion, renewing the objection at the start of trial, renewing the objection again at the close of the state's evidence, and finally renewing the objection at the close of evidence.

**{¶27}** An appellate court reviews joinder and severance issues for an abuse of discretion. *State v. Gideon*, 2021-Ohio-1863, 174 N.E.3d 381, ¶ 5 (3d Dist.); *State v.*

9

*Jordan*, 1st Dist. Hamilton No. C-210603, 2022-Ohio-2566, ¶ 35. An abuse of discretion occurs when the trial court's judgment "neither comports with reason, nor the record." *Jordan* at ¶ 35. "An abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.' " *Id.*, quoting *State v. Travis*, 11th Dist. Trumbull Nos. 2018-T-0101 and 2018-T-0102, 2020-Ohio-628, ¶ 65, quoting *State v. Figueroa*, 2018-Ohio-1453, 110 N.E.3d 612, ¶ 26 (11th Dist.), quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

**{¶28}** Under Crim.R. 13, "[t]he court may order two or more complaints to be tried together, if the offenses or the defendants could have been joined in a single complaint." *See Jordan* at ¶ 36. However, under Crim.R. 14, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts * * *." *See Jordan* at ¶ 37.

**{¶29}** Crim.R. 8(A) provides that "two or more offenses may be charged in the same indictment if the offenses charged are (1) of 'the same or similar character,' (2) 'based on the same act or transaction,' (3) 'based on two or more acts or transactions connected together or constituting parts of a common scheme or plan,' or (4) 'part of a course of criminal conduct.' " *Jordan* at ¶ 36, quoting *State v. Allen*, 1st Dist. Hamilton Nos. C-050010 and C-050011, 2006-Ohio-2338, ¶ 18.

**{¶30}** In reviewing the trial court's decision to join two complaints, the joinder is not prejudicial if the court makes either of two determinations. *Jordan* at ¶ 38. The "other acts" test negates prejudice from joinder if the state would be permitted under

10

Evid.R. 404(B) to introduce evidence of one offense in a separate trial on the other offense. *Id.* Alternatively, the "simple and distinct" test negates prejudice if the evidence of each of the joined offenses is "simple and distinct."[1] *Id.*

> The object of the "simple and distinct" test is to prevent the jury from improperly considering evidence of various crimes as corroborative of each other. "The very essence of the rule is that the evidence be such that the jury is unlikely to be confused by it or misuse it." Generally, under the simple-and-distinct test, if the evidence of each offense is direct and uncomplicated, it is presumed that the trier of fact is capable of segregating the proof and not cumulating evidence of the various offenses being tried.

*State v. Echols*, 128 Ohio App.3d 677, 694, 716 N.E.2d 728 (1st Dist.1998); *Jordan*, 1st Dist. Hamilton No. C-210603, 2022-Ohio-2566, at ¶ 38.

{¶31} In determining whether evidence of separate offenses is simple and distinct, courts consider such factors as whether: "(1) the jury is capable of readily separating the proof required for each offense, (2) the evidence is unlikely to confuse jurors, (3) the evidence is straightforward, and (4) there is little danger that the jury would 'improperly consider testimony on one offense as corroborative of the other.' " *Gideon*, 2021-Ohio-1863, 174 N.E.3d 381, at ¶ 9.

{¶32} In the case at bar, the state argues that the evidence of each charge was simple and distinct. The alleged offenses were against separate victims and took place at different times, and each had distinct evidence presented as to Chasteen's guilt. The

---

[1] As we have previously observed, "[t]he Ohio Supreme Court has used 'simple and distinct' and 'simple and direct' interchangeably." *See State v. Echols*, 128 Ohio App.3d 677, 694, 716 N.E.2d 728 (1st Dist.1998).

jury could easily differentiate the evidence offered for each offense, based on testimony from each of the victims, and the evidence of each offense was straightforward. Finally, the jury did reach different verdicts on the charges, suggesting that it did, in fact, differentiate between the two charged offenses.

**{¶33}** In *Gideon*, the Third District held that the joinder of seven charges of sexual imposition against a single defendant was not an abuse of discretion where each instance of the charged conduct occurred separately and with different victims. *Gideon* at ¶ 12-13. The *Gideon* court found that joinder was appropriate under the simple-and-distinct test because there was no "complicated methodology" to the alleged crimes, the offenses were committed at the same location within a few months of each other, and each victim testified independently. *Id.* at ¶ 13.

**{¶34}** The state's evidence in the case at bar is similar: there was no complicated methodology, the alleged offenses both occurred at Chasteen's workplace, and each victim testified independently to what she experienced. Following *Gideon*, we hold that the trial court did not abuse its discretion in joining the cases under the simple-and-distinct test. Because the state has shown that the evidence against Chasteen is simple and distinct, we need not consider whether the evidence would be admissible under the other-acts test. *See Gideon*, 2021-Ohio-1863, 174 N.E.3d 381, at ¶ 15. Accordingly, we overrule Chasteen's third assignment of error.

### III. Conclusion

**{¶35}** Having overruled each of Chasteen's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.**, and **WINKLER, J.**, concur.

12

Please note:

The court has recorded its entry on the date of the release of this opinion.