[Cite as *State v. Antolini*, 2025-Ohio-2060.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240543 |
|  |  | TRIAL NO. | 24/CRB/4103/B |
| Plaintiff-Appellee, | : |  |  |
| vs. | : |  |  |
|  |  | *JUDGMENT ENTRY* |  |
| ANTHONY ANTOLINI, | : |  |  |
| Defendant-Appellant. | : |  |  |

This cause was heard upon the appeal, the record, the briefs, and arguments.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/11/2025 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *State v. Antolini*, 2025-Ohio-2060.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240543 |
| | | TRIAL NO. | 24/CRB/4103/B |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| ANTHONY ANTOLINI, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 11, 2025

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Susan M. Zurface*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

CROUSE, Judge.

**{¶1}** Following a jury trial, defendant-appellant Anthony Antolini was convicted of aggravated menacing, a first-degree misdemeanor, in violation of R.C. 2903.21. He has appealed that conviction, raising two assignments of error for our review.

**{¶2}** Antolini first argues that the trial court committed plain error by failing to instruct the jury on the definition of serious physical harm and by only providing it with the definition of physical harm. He further argues that his conviction for aggravated menacing was not supported by sufficient evidence and was against the manifest weight of the evidence. Finding Antolini's arguments to be without merit, we affirm the trial court's judgment.

## I. Factual and Procedural History

**{¶3}** Complaints were filed in the Hamilton County Municipal Court charging Antolini with domestic violence and aggravated menacing. The victim of both offenses was his wife, M.A.

**{¶4}** During the jury trial, M.A. testified that she and Antolini had been married for 18 years, and that, in October of 2023, Antolini confessed to her that he had been "sexting" with other women and that two of the women were extorting him for money. According to M.A., Antolini ultimately admitted to engaging in similar behavior with approximately 20 women over the course of their marriage.

**{¶5}** M.A. explained that Antolini's confession was a "turning point" that caused her to realize that both she and Antolini were unhappy and to consider "try[ing] something different" in their marriage. She and Antolini agreed to expand their relationship and open it to other people, although they set stipulations on this expansion. M.A. testified that any person welcomed into their relationship could not

be someone that she or Antolini already knew, that the relationship with the third party was not to be physical, and that no pictures were to be exchanged.

**{¶6}** M.A. testified that, despite these stipulations, she took her relationship with a third person to the "physical side." She stated that, on March 8, 2024, Antolini saw a text message on her phone while she was sleeping. The message was from a "friend" with whom she was in a relationship, and it stated that he loved her. M.A. explained that after seeing the message, Antolini turned on the lights, threw her phone at her, and said, "I can't believe you are doing this to me. I might as well kill you. I should have never woken you up. I should have just shot and killed you." After threatening several more times to kill her and shoot her, Antolini left for work.

**{¶7}** M.A. testified that she initially thought Antolini was simply making threats and would "cool down" with time. She planned to let the situation diffuse before talking to him, and she continued to reside in the house in a separate area from Antolini. From March 8 until March 11, 2024, Antolini continued to make threats. These threats included statements that he would sell the house out from under her, take all the money out of their bank account, call her boss, and kill her. Antolini never had a weapon in his physical possession when making these threats.

**{¶8}** M.A. testified that she and Antolini were both at home on March 11, 2024. They tried to talk, but their discussion only resulted in more arguing. M.A. stated that Antolini had a telephone counseling session that afternoon. She had hoped the counseling session would calm him down, but it did not, and Antolini continued to threaten her after the session ended. According to M.A., Antolini told her after the session, "I should just kill you now. I should just kill. I should shoot and kill you." Antolini told M.A. that he saw no point in living if she was with someone else, and that he should just kill himself. M.A. described Antolini's tone of voice as irrational. She

testified that there were multiple guns in the house, including three guns in the living room where they were arguing. M.A. stated that Antolini never put his hands on her or held a gun while making threats.

**{¶9}** M.A. testified that she left the house, drove around for a while, and eventually went to the police station to file a report. She stated that she did not feel safe returning home. When asked why she had finally decided to report Antolini four days after he had begun threatening her, M.A. stated that she had begun to believe that Antolini would follow through on his threats after his counselor had failed to calm him down.

**{¶10}** The State also presented testimony from Cincinnati Police Officer Brennan Hiatt, who took M.A.'s statement when she arrived at the police station. Hiatt testified that M.A. was very emotional and was crying. A portion of Hiatt's interaction with M.A. was captured on his body-worn camera. This video footage was admitted at trial and played for the jury. Hiatt testified that, per department policy, he had no discretion as to whether to file the domestic-violence charge against Antolini. He did, however, have discretion to file the aggravated-menacing charge.

**{¶11}** Antolini did not present any witness or take the stand.

**{¶12}** Outside of the jury's presence, Antolini and the State reviewed the jury instructions that the trial court intended to provide. The parties discussed the fact that the domestic-violence charge required the State to prove that M.A. faced an imminent threat of physical harm, whereas the aggravated-menacing charge required the State to prove that M.A. faced serious physical harm that did not have to be imminent. After this discussion, Antolini made a Crim.R. 29 motion for an acquittal, which the trial court denied.

**{¶13}** During closing argument, the State told the jury,

For the domestic violence threat, the State has to prove beyond a reasonable doubt that on or about March 11th, which includes the days leading up to that, in the City of Cincinnati, Hamilton County, Ohio, the Defendant Anthony Antolini knowingly caused [M.A.], a family or household member, to believe that he would cause her imminent physical harm.

. . .

On the aggravated menacing charge, you are looking at the same conduct and some of the elements are different.

On or about March 11th, in the City of Cincinnati, Hamilton County, Ohio, the Defendant Anthony Antolini knowing[ly] caused [M.A.] to believe that he would cause her serious physical harm.

The major difference here is in the serious physical harm as opposed to imminent physical harm. Threatening to shoot someone when you have easy access to not one, not two, but three firearms is knowingly causing a person to believe that if you shoot them you are going to sustain a serious injury. It's not going to be a scratch. It's not going to be a bruise. It's not going to be a nick. It's the possibility of being killed.

**{¶14}** After closing arguments, the trial court provided the jury with the following relevant instructions:

The domestic violence charge, Case Number 24/CRB/4103(A), the defendant is charged with domestic violence in violation of Ohio Revised Code 2919.25(C).

Before you can find the defendant guilty, you must find beyond

6

a reasonable doubt that on or about the 11th day of March, 2024, in the City of Cincinnati, State of Ohio, the Defendant Anthony Antolini did knowingly cause or attempt to cause, by threat of force, knowingly cause [M.A.], a family or household member, to believe the defendant would cause imminent physical harm to the family or household member defined in Ohio Revised Code 2919.25(C), contrary to and in violation of Section 2919.25(C) of the Ohio Revised Code.

The defendant was also charged with aggravated menacing, Case Number 24/CRB/4103(B). The defendant is charged with aggravated menacing in violation of Ohio Revised Code 2903.21.

Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 11th day of March, 2024, in the City of Cincinnati, State of Ohio, the Defendant Anthony Antolini did knowingly cause [M.A.] to believe that the defendant would cause serious physical harm to [M.A.] contrary to and in violation of Section 2903.21 of the Ohio Revised Code.

{¶15} The trial court next provided the jury with definitions of the terms "knowingly," "cause," "physical harm," "threat of force," "imminent," and "reside." With respect to the definition of "physical harm" the trial court told the jury, "Physical harm means any injury, illness or any psychological impairment—sorry—physiological impairment, regardless of the gravity or duration."

{¶16} During its deliberations, the jury sent the court a question asking, "What defines 'physiological impairment' under physical harm on page 6 of the jury instructions?" The court responded, "[R]emember the words in the English language, whether used in this charge or in the evidence presented that you are to weigh, are to

be given normal, customary mean[ings] . . . . unless you are specifically instructed to give them some specialized and different meaning in this charge. And this instruction should govern[] you throughout our deliberations."

**{¶17}** The jury found Antolini guilty of aggravated menacing, but it was unable to reach a verdict on the charge of domestic violence and that charge was dismissed. Antolini now appeals.

## II. Jury Instructions

**{¶18}** In his first assignment of error, Antolini argues that the trial court committed plain error by only providing the jury with an instruction on the definition of "physical harm" and by failing to also provide it with the definition of "serious physical harm."

**{¶19}** Antolini concedes that he is limited to a plain-error review by this court because he failed to object to the jury instructions below. *See State v. Owens*, 2020-Ohio-4616, ¶ 7 ("When a defendant fails to object to the jury instructions, she waives all but plain error."); *State v. Samueal*, 2023-Ohio-3322, ¶ 25 (1st Dist.) (same). To demonstrate plain error, an appellant must establish "that an error occurred, that the error was obvious, and that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial." (Cleaned up.) *State v. Chasteen*, 2024-Ohio-909, ¶ 11 (1st Dist.). Even if an appellant establishes the occurrence of such an error, the error should only be corrected where it "seriously affects the fairness, integrity, or public reputation of judicial proceedings" or when necessary "to prevent a manifest miscarriage of justice." *State v. Bond*, 2022-Ohio-4150, ¶ 35.

**{¶20}** Generally, "'a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged.'" *State*

*v. Wamsley*, 2008-Ohio-1195, ¶ 17, quoting *State v. Adams*, 62 Ohio St.2d 151, 153 (1980); *see also Chasteen* at ¶ 18. But "the failure to instruct on each element of an offense is not necessarily reversible as plain error," and "an appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions." *Wamsley* at ¶ 17, citing *Adams* at paragraphs two and three of the syllabus; *see Chasteen* at ¶ 18.

**{¶21}** Antolini was charged with both domestic violence and aggravated menacing. The trial court first instructed the jury on the elements of each of these offenses. With respect to the offense of domestic violence, it told the jury that it could not find Antolini guilty of the offense unless it found that he knowingly caused, or attempted by threat of force to cause, a family or household member, in this case M.A., to believe that he would cause her imminent physical harm. With respect to the offense of aggravated menacing, the court told the jury that it could not find Antolini guilty of this offense unless it found that he knowingly caused M.A. to believe that he would cause her serious physical harm.

**{¶22}** After reading the elements of both offenses, the trial court instructed the jury on the definitions of various terms in each offense. It defined the term "physical harm," which was applicable to the offense of domestic violence. But it failed to define the term "serious physical harm," which was applicable to the aggravated-menacing offense.

**{¶23}** As the trial court instructed the jury, physical harm is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). In contrast, serious physical harm may mean any of the following:

> (a) Any mental illness or condition of such gravity as would

normally require hospitalization or prolonged psychiatric treatment;

(b ) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

**{¶24}** Because serious physical harm is an element of the offense of aggravated menacing, the trial court should have defined that term for the jury and its failure to do so was error. *See Wamsley*, 2008-Ohio-1195, at ¶ 17, quoting *Adams*, 62 Ohio St.2d at 153 ("'a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged.'"). In order to determine if that error warrants reversal as plain error, we must "review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions." *Id.* at ¶ 17.

**{¶25}** In *State v. Wolford*, 2007-Ohio-6428, ¶ 15 (3d Dist.), the court confronted this same issue when it was asked to determine, in the context of an aggravated-menacing charge, whether a trial court committed plain error by providing the jury an instruction on physical harm rather than serious physical harm. In *Wolford,* the defendant was charged with aggravated menacing after firing three warning shots into the air when an unfamiliar vehicle pulled into his driveway and

drove towards his home and garage. *Id.* at ¶ 2 and 5.

**{¶26}** In its review of the jury instructions, the Third District first held that the trial court erred in failing to instruct the jury on serious physical harm because it was an element of the offense that should have been defined for the jury. *Id.* at ¶ 20. The court then found that this constituted plain error, stating,

> Similarly, we find that the trial court's erroneous definition of "physical harm" rather than "serious physical harm" substantially lowered the prosecution's burden of proof. See Id. The term "physical harm" refers to "any injury, illness, or other physiological impairment, *regardless of its gravity* or duration." R.C. 2901.01(A)(3), emphasis added. However, "serious physical harm" requires a significantly more serious injury. Accordingly, we hold that the trial court erroneously defining "physical harm" instead of "serious physical harm" constituted plain error.

(Emphasis in original.) *Id.* at ¶ 22.

**{¶27}** We decline to follow the reasoning in *Wolford* because that court did not evaluate the evidence presented in the case to determine if the erroneous instruction resulted in a manifest miscarriage of justice. *See id.* Rather, the court concluded that plain error resulted because the provision of an instruction on physical harm rather than serious physical harm substantially lowered the State's burden of proof. Under the *Wolford* court's analysis, plain error would result every time a trial court issued an instruction on physical harm rather than serious physical harm. That is not the law.

**{¶28}** As we evaluate the record and the instructions as a whole in this case to determine whether a manifest miscarriage of justice resulted from the trial court's

11

omission of an instruction on serious physical harm, *see Wamsley*, 2008-Ohio-1195, at ¶ 17, we first note that the record contained evidence from which the jury could have found that Antolini threatened serious physical harm against M.A.

**{¶29}** The evidence presented at trial established that Antolini threatened multiple times to shoot and kill M.A. after discovering a text message on her phone revealing that she was in a physical relationship with another person. As this court noted in *State v. Cruzbaez*, 2019-Ohio-2452, ¶ 18 (1st Dist.), "[b]y its very nature, being shot can cause serious physical harm or death."

**{¶30}** Further, although the trial court did not define "serious physical harm" for the jury, it did instruct the jury that it had to find that M.A. believed Antolini would cause her serious physical harm. Additionally, during closing arguments, the State highlighted the difference in its burden of proof with respect to the harm suffered by M.A. for each charged offense. It stated, "The major difference here is in the serious physical harm as opposed to imminent physical harm. Threatening to shoot someone when you have easy access to not one, not two, but three firearms is knowingly causing a person to believe that if you shoot them you are going to sustain a serious injury. It's not going to be a scratch."

**{¶31}** On this record, we cannot hold that the trial court's failure to instruct the jury on the definition of serious physical harm impacted the outcome of the trial or resulted in a manifest miscarriage of justice. *See Chasteen*, 2024-Ohio-909, at ¶ 11 (1st Dist.). We accordingly hold that no plain error resulted from the trial court's omission of a jury instruction on serious physical harm.

**{¶32}** We find it likely that the trial court's omission in this case stemmed from the order in which the jury instructions were provided. The court first instructed the jury on the elements of the two charged offenses and *then* collectively defined those

elements. To prevent similar errors from occurring, it would be a better practice for the trial court to instruct the jury on the elements of a specific offense and then provide any necessary definitions of those elements *before* instructing the jury on the elements of a second offense.

**{¶33}** Several provisions in the Ohio Jury Instructions touch on the order in which jury instructions should be provided. *Ohio Jury Instructions,* CR § 201.01 (Rev. Sept. 11, 2010), which sets forth a trial outline/checklist for felony cases, provides that "[c]ommonly, final instructions are given in the following order: (1) general instructions, (2) disputed issues instructions, and (3) deliberations instructions." More relevant to the scenario present in the case at bar, however, is the User's Guide to the Ohio Jury Instructions.

**{¶34}** The User's Guide states, "When an instruction uses a term or terms that need to be defined for a jury, a subsequent numbered section or subsection in that instruction provides either the definition or a reference to elsewhere in OJI or in the Ohio Revised Code where the definition to be read and submitted to the jury exists." *Ohio Jury Instructions,* Guide (Rev. Mar. 12, 2022). This statement is best understood when considered in the context of a specific instruction that requires additional definitions, which would include the sample instruction on aggravated menacing.

**{¶35}** A sample jury instruction for the offense of aggravated menacing is found in *Ohio Jury Instructions,* CR § 503.21 (Rev. Oct. 14, 2023), which states, in relevant part:

> 1. The defendant is charged with aggravated menacing. Before you can find the defendant guilty of aggravated menacing, you must find beyond a reasonable doubt that on or about the ____ day of ____, ____, and in ____ County (*other jurisdiction*), Ohio, the defendant knowingly

caused (*insert name of alleged victim*) to believe that the defendant would cause serious physical harm to (*insert name of alleged victim*) (his/her [property] [unborn]) (*a member of his/her immediate family*).

    2. KNOWINGLY. OJI-CR 409.11; R.C. 2901.22(B).

    3. CAUSATION. OJI-CR 409.55, OJI-CR 409.56.

    4. SERIOUS PHYSICAL HARM TO PERSONS. R.C. 2901.01.

(Emphasis in original.)

**{¶36}** Read in conjunction, the User's Guide and the sample instruction for aggravated menacing suggest that the best practice is for a trial court to instruct the jury on the elements of the offense of aggravated menacing and then to immediately provide any necessary definitions of those elements, including the element of serious physical harm. If the elements are provided and defined simultaneously, the jury can more accurately apply the law and avoid confusion.

**{¶37}** This practice is also encouraged in the User's Guide to the Illinois Pattern Jury Instructions. When discussing the instructions to be provided for criminal offenses, the guide states, "Some instructions define certain words or phrases used elsewhere in the instructions. These definitions should be given following the instructions in which the defined word or phrase is used." 1 *Illinois Pattern Jury Instructions*, Criminal User's Guide (2025).

**{¶38}** To prevent and discourage both the omission of required instructions and jury confusion, we encourage trial courts to define the elements of a charged offense immediately after instructing the jury on those elements.

**{¶39}** Having held, on the facts of this case, that no plain error resulted from the trial court's omission of a jury instruction on serious physical harm, we overrule Antolini's first assignment of error.

14

### III. Sufficiency and Weight of the Evidence

**{¶40}** In his second assignment of error, Antolini argues that his conviction for aggravated menacing was not supported by sufficient evidence and was against the manifest weight of the evidence.

**{¶41}** A challenge to the sufficiency of the evidence requires us to determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Cleaned up.) *State v. Walker*, 2016-Ohio-8295, ¶ 12. In contrast, when this court reviews a challenge to the manifest weight of the evidence, it must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.), citing *State v. Thompkins*, 1997-Ohio-52, ¶ 25.

**{¶42}** Antolini was found guilty of aggravated menacing in violation of R.C. 2903.21(A), which provides, "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

**{¶43}** To sustain a conviction for aggravated menacing, "the state must show that the victim had a subjective belief of fear of serious physical harm." *State v. Landrum,* 2016-Ohio-5666, ¶ 9 (1st Dist.). The State may do so with circumstantial evidence. *Id.* The State is not required to establish "that the offender is able to carry out the threat or even that the offender intended to carry out the threat." *State v. Clemmons*, 2020-Ohio-5394, ¶ 33 (12th Dist.).

**{¶44}** Antolini argues that the evidence failed to establish that M.A. believed

15

he would cause her serious physical harm. He contends that because he phrased his threats conditionally, for example by stating, "I should just kill you," or "I ought to kill you," and because he never said that he actually would kill M.A., the evidence showed that he lacked an intent to shoot M.A. This argument is without merit because the State was not required to prove that he intended to carry out the threat. *Id.* Rather, the relevant issue is whether Antolini's actions caused M.A. to believe that he would cause her serious physical harm.

**{¶45}** On this point, Antolini contends that the fact that M.A. remained in the house for four days under threat established that she did not believe he would harm her or carry out his threats.

**{¶46}** In *State v. Goodwin*, 2006-Ohio-66 (10th Dist.), the court considered a similar argument. The appellant in *Goodwin* had been convicted of aggravated menacing and argued on appeal that the conviction was not supported by sufficient evidence because the victim's actions were "clearly inconsistent with her testimony that she was in fear." *Id.* at ¶ 6 and 18. In support, appellant argued that because the victim did not immediately call the police and instead called appellant to yell at him, she was not fearful of being harmed. *Id.* at ¶ 18 and 23. The court rejected this argument, stating that the victim's actions, "while they may appear unorthodox, do not negate her belief that appellant was serious in his threat and that she was fearful of appellant." *Id.* at ¶ 23.

**{¶47}** In the case at bar, M.A. testified that she remained in the house for approximately four days after Antolini first threatened her because she believed that he would cool down after the situation diffused. However, on March 11, 2024, after Antolini had a counseling session and then continued to threaten her, M.A. believed that Antolini would follow through on his threats. At point, she reported his

behavior to the police. As in *Goodwin*, M.A.'s actions did not "negate her belief" that Antolini was serious about his threat. *See id*. The record contains sufficient evidence to establish that M.A. had a subjective belief of fear of serious physical harm, and we hold that Antolini's conviction for aggravated menacing was supported by sufficient evidence. *See Landrum*, 2016-Ohio-5666, at ¶ 9 (1st Dist.); *Walker*, 2016-Ohio-8295, at ¶ 12.

**{¶48}** The aggravated-menacing conviction was also not against the manifest weight of the evidence. The jury was in the best position to judge the credibility of the witnesses. *State v. Shepard*, 2021-Ohio-964, ¶ 62 (1st Dist.); *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. It was entitled to accept M.A.'s explanation for why she remained in the house for three days before ultimately leaving the home and filing a complaint against Antolini.

**{¶49}** The second assignment of error is overruled, and the trial court's judgment convicting Antolini of aggravated menacing is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **BOCK, J.,** concur.