[Cite as *State v. Oliver*, 2025-Ohio-4824.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240702 |
|  |  | TRIAL NO. | 24/CRB/6370 |
| Plaintiff-Appellee, | : |  |  |
| vs. | : |  |  |
|  |  | *JUDGMENT ENTRY* |  |
| TASHIA OLIVER, | : |  |  |
| Defendant-Appellant. | : |  |  |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 10/22/2025 per order of the court.**

**By:**_____
 **Administrative Judge**

[Cite as *State v. Oliver*, 2025-Ohio-4824.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                    :        APPEAL NO.    C-240702
                                           TRIAL NO.     24/CRB/6370
    Plaintiff-Appellee,      :

    vs.                      :
                                                  *O P I N I O N*
TASHIA OLIVER,                    :

    Defendant-Appellant.     :


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 22, 2025


*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Victoria L. Lowry*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**MOORE, Judge.**

{¶1}    Defendant-appellant Tashia Oliver appeals her conviction for aggravated menacing. There is no dispute that, on April 17, 2024, Oliver drove her truck past the car of the victim, M.B., and cut him off at the intersection of Mitchell Avenue and Vine Street. This began a verbal exchange between the parties as they continued to drive through the intersection and led to the collision of their vehicles. Oliver was charged with aggravated menacing after M.B. alleged that Oliver had pointed a gun at him, threatening to harm him and his child, who was in the back seat of the car.

{¶2}    On appeal, Oliver argues that her conviction is contrary to the manifest weight of the evidence based on the inconsistencies between the testimonies of the State's witnesses. She further argues that it is implausible that she pointed her gun at M.B. while simultaneously driving her truck.

{¶3}    The question before this court is whether the trial court lost its way and created a manifest miscarriage of justice by finding Oliver guilty of aggravated menacing. We hold that the trial court did not lose its way, and we affirm the trial court's judgment.

## I.  Factual and Procedural History

{¶4}    Oliver was charged with aggravated menacing, a first-degree misdemeanor, in violation of R.C. 2903.21(A). The matter proceeded to a bench trial on October 24, 2024.

### M.B.'s Testimony

{¶5}    M.B. testified that he told Oliver to watch how she was driving because his child was sitting in the back seat of his car, and Oliver responded, "F*** your baby." M.B. testified that, after he admonished Oliver for the way she was driving, she began

to ram the side of his car with her truck and "dragged [his] car" about 10 to 15 feet. He stated that Oliver rammed his car two times, which caused him to fear that Oliver would cause him to "plow into one of [the] parked cars" on the other side of him and injure his child in the back seat. M.B. further explained that the tire on Oliver's front passenger side was "right next to [his] face" during this encounter, as his window was rolled down. M.B. testified that he believed that Oliver was attempting to run his car off the road, so he attempted to "drive off" out of fear for his and his child's safety.

{¶6} M.B. recalled that Oliver stopped her truck, which allowed him to get his car past "a small gap between the front end of her car and some parked cars without touching them." He explained that he started to drive away out of concern that Oliver would continue to hit his car. He testified that he was looking for somewhere he could pull over to check on his child when he noticed Oliver was "tailgating" him, so he had his girlfriend, who was also a passenger, call 911.

{¶7} M.B. testified that he was at a stop sign on Dana Avenue with a vehicle in front of him and Oliver's vehicle ahead of him and "diagonal to [his] passenger side" when Oliver "look[ed] back out of her window hanging out with a gun and was pointing it at [him]." M.B. testified that Oliver said that she "will kill all of [them] right now," and he thought she was going to shoot them.

{¶8} M.B. explained that Oliver had been in front of him right after his girlfriend called 911, but then Oliver got behind him again and followed him down Dana Avenue into Norwood. M.B. testified that when he was flagging down police that he saw at Dana Avenue and Montgomery Road, Oliver made a U-turn and drove away.

### *Oliver's Testimony*

{¶9} Oliver testified that, after she cut M.B. off, she thought she heard him say, "B**** be careful," to which she responded, "You are a b****." Oliver asserted that

M.B. caused the collision by ramming his car into her truck. She stated that she "must have taken [her] foot off the brake" causing her truck and M.B.'s car to separate, and M.B.'s car "scrape[d] past" her. Oliver testified that M.B. "took off" once their vehicles separated, so she followed him to obtain his license plate number.

{¶10} Oliver also called 911. The recording was played in open court. Oliver identified her voice on the recording yelling at M.B. that, among other things, "I wish I had this mother****** loaded," referring to the gun she was holding. Oliver testified that this statement was directed at M.B. Oliver explained that she had held a concealed-carry license for 30 years, and kept her gun unloaded in the middle console of her truck, with the clip stored "in the front." She testified that she did not point her gun at anyone, but M.B. must have seen it because she was holding the gun in the same hand that she was using to steer the truck.

{¶11} The 911 operator was heard instructing Oliver to stay at the intersection at Clinton Springs and Reading Road, and to activate the flashers on her truck so the police could locate her. Oliver told the 911 operator that M.B. was proceeding onto Dana Avenue and that she was still following him. Oliver also told the 911 operator that she wanted the police to meet her at the United Dairy Farmers because her and M.B.'s vehicles were "at the top of Montgomery [Road] and Dana [Avenue]."

{¶12} The 911 operator advised Oliver to stop following M.B. and instead stay at the United Dairy Farmers until police arrived. Oliver testified that she waited for the police at the United Dairy Farmers on Montgomery Road but, after seeing two police cars pass her and believing the police were not coming to meet her, drove home.

{¶13} On cross-examination, Oliver conceded that she did not follow the 911 operator's repeated instructions to (1) remain at the intersection at Clinton Springs and Reading Road, then (2) to wait for the police at the United Dairy Farmers on

Montgomery Road, and (3) not to follow M.B.

{¶14} Oliver testified that she turned herself in and spoke with police about the incident after discovering there was a warrant for her arrest.

### *K.M.'s Testimony*

{¶15} K.M. testified that she was at the stop light at Mitchell Avenue and Clinton Springs Avenue when she saw Oliver's truck blocking M.B.'s car and heard them yelling at each other. She explained that M.B. attempted to drive away when Oliver "just start[ed] pow, pow, hitting [M.B.'s] car." K.M. testified that, although her light turned red, she "still went up the street" and saw "like plastic and tires . . . because [Oliver's] car [wa]s really like rubbing, like hitting" M.B.'s car, and that Oliver could have run M.B. off the road. K.M. described M.B.'s car as "trying to get away" while Oliver was "slamming" her truck into M.B.'s car three or four times. K.M. stated that she also saw Oliver throw something out of her truck at M.B.'s car.

{¶16} K.M. recalled that she could not see them for about 30 seconds because "they went around a curve." She stated that she continued to follow the vehicles into Norwood until Oliver made a U-turn and drove away. K.M. testified that she pulled her car up next to M.B.'s and heard a baby crying, asked M.B. if they were okay, then pulled her car into the parking lot where M.B. parked his car.

### *Oliver is found guilty of aggravated menacing.*

{¶17} The trial court found that Oliver was holding a gun and threatened to shoot M.B. and his child. The court stated that it found M.B.'s testimony "more credible" based on K.M.'s testimony that Oliver rammed her truck into M.B.'s car and threw something at it, causing K.M. to follow them out of concern for M.B.'s safety. In response to Oliver's comment that K.M. never testified that Oliver pointed the gun at M.B., the court stated, "Driving with a gun on a steering wheel and saying, I wish this

thing was loaded, is threatening."

{¶18} The trial court found Oliver guilty as charged. The court ordered Oliver to stay away from M.B. and imposed $100 in costs and $42 in fees associated with the issuance of subpoenas.

{¶19} This appeal followed.

## II. Analysis

{¶20} Oliver challenges the credibility of M.B.'s testimony, arguing that he caused the accident that gave rise to this incident, she never said to M.B., "F*** your baby," and M.B. could not remember the streets where the incident occurred. She asserts that she never pointed her gun at M.B. and challenges the credibility of M.B.'s testimony that she was hanging out of the window while pointing the gun at him. Oliver also challenges K.M.'s identification of Oliver, whether she witnessed Oliver throwing an item out of her vehicle, and that K.M. did not testify to seeing Oliver with a gun.

{¶21} When applying the manifest-weight standard of review, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and then determines whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *State v. Champion*, 2021-Ohio-4002, ¶ 14 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶22} A manifest-weight challenge concerns the plaintiff's burden of persuasion. *State v. Brown*, 2025-Ohio-2351, ¶ 18 (1st Dist.). The fact finder is in the best position to judge the credibility of the witnesses. *Id.* The fact finder is free to believe some, all, or none of any witnesses' testimony. *State v. Ridley*, 2022-Ohio-2561, ¶ 25 (1st Dist.). We, therefore, afford substantial deference to the fact finder's

credibility determinations. *Brown* at ¶ 18.

**{¶23}** A conviction is not against the manifest weight simply because the fact finder believed the prosecution's witnesses. *Id.* Nor will a conviction be reversed on manifest-weight grounds merely because inconsistent evidence was presented at trial. *Ridley* at ¶ 25. A conviction may only be reversed under a manifest-weight review in exceptional cases where the evidence weighs heavily against the conviction. *Brown* at ¶ 18.

### *Oliver's conviction was not against the manifest weight of the evidence.*

**{¶24}** R.C. 2903.21(A) provides that the offender shall not knowingly cause a person to believe that the offender will cause them, or a member of the person's immediate family, serious physical harm. The State must show that the victim had a subjective belief of fear of serious physical harm. *State v. Antolini*, 2025-Ohio-2060, ¶ 42 (1st Dist.). The State is not required to show that the offender is able, or intended, to carry out the threat. *Id.* Evidence of a person's belief that an offender will cause serious physical harm can be proven with circumstantial evidence. *Id.*

**{¶25}** Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. *State v. Robinson*, 2023-Ohio-2312, ¶ 19 (1st Dist.). Circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Id.*

**{¶26}** "Brandish" means to "wave or exhibit in a menacing or challenging manner." *State v. Thomas*, 2024-Ohio-5662, ¶ 21 (8th Dist.), quoting *State v. McCrary*, 2009-Ohio-4390, ¶ 30 (1st Dist.). Brandishing a firearm has been held to be enough to support a conviction for aggravated menacing—even if the gun is unloaded. *See State v. Primous*, 2020-Ohio-912, ¶ 34 (8th Dist.) (merely displaying a

weapon supports a conviction for aggravated menacing where the victim believed the appellant would cause serious physical harm); *Thomas* at ¶ 21 (brandishing a firearm is sufficient to justify a conviction for the offense of aggravated menacing, a misdemeanor of the first degree); *State v. Villani*, 1980 Ohio App. LEXIS 10509, *4 (1st Dist. Apr. 16, 1980) (conviction for aggravated menacing upheld where the record showed appellant brandished a shotgun after he was confronted by police, and his assertion that the shotgun was unloaded was insufficient to dispel the danger perceived by the officer).

{¶27} Oliver contests the testimony that she was hanging out of the window while pointing the gun at M.B. and threatening to shoot M.B. and his child. Oliver, however, concedes she was holding the gun "on the steering wheel," which made it visible to M.B.

{¶28} M.B.'s testimony reflects that, after the collision, Oliver was driving behind M.B., tailgating him, and that when her truck was diagonal to the front passenger side of his vehicle, "she was looking back out of her window hanging out with a gun and was pointing it at [him]." The trial court was free to believe this testimony and conclude that Oliver pointed her gun at M.B.

{¶29} But, even if Oliver did not point her gun at M.B., the court needed only to find credible evidence that Oliver caused M.B. to believe that she was going to seriously harm him and his child. M.B. testified that Oliver caused the collision, he saw her gun and heard her say that she would "kill all of [them] right now," and that her actions made him fear for his and his child's safety. It was the court's prerogative to believe this testimony and state in its findings that M.B.'s testimony was credible based on K.M.'s testimony.

{¶30} Regardless, Oliver conceded that (1) she said she wished the gun that

she was holding was loaded, as reflected in the 911 recording, (2) she directed that statement at M.B., and (3) the gun was visible to M.B. That evidence alone weighs in favor of a conviction for aggravated menacing. Oliver, therefore, has not shown that the trial court lost its way and created a manifest miscarriage of justice by convicting her of aggravated menacing.

**{¶31}** Accordingly, we overrule Oliver's sole assignment of error.

### III. Conclusion

**{¶32}** We affirm the trial court's judgment.

Judgment affirmed.

**KINSLEY, P.J.,** and **ZAYAS, J.,** concur.